Adam Rose (210880)
adam@frontierlawcenter.com
Frontier Law Center
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Shannon Liss-Riordan (310719)
sliss@llrlaw.com
Lichten & Liss-Riordan
729 Boylston Street, #2000
Boston, MA 02116
Telephone: (617) 994-5800

Attorneys for Plaintiff
Emma Hart, individually and on behalf of a
class of similarly situated individuals

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA HART, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>STARWOOD HOTELS AND RESORTS, LLC, SHERATON OPERATING CORPORATION, and DOES 1 to 10,<br><br>        Defendants. | CASE NO.  8:17-cv-2021-JVS-KES<br>CLASS ACTION<br><br>PLAINTIFF EMMA HART'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADAM ROSE; PROPOSED ORDER<br><br>Date:  February 11, 2019<br>Time: 1:30 p.m.<br>Ctrm: 10C |

MOTION FOR PRELIMINARY APPROVAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on February 11, 2019 at 1:30 p.m. or as soon thereafter as may

be heard in Courtroom 10C of the Southern Division of the Central District of

California located at 411 W. Fourth St., Santa Ana, CA 92701, plaintiff Emma Hart

will move the Court for preliminary approval of the proposed class action settlement

pursuant to Fed. R. Civ. Pro. 23(e). The Motion is based on this Notice, the

accompanying Memorandum of Points and Authorities, the Declaration of Adam

Rose and its exhibits, pleadings on file, and oral arguments at the hearing.

Date: January 9, 2019                                    FRONTIER LAW CENTER


                                                         /s/ Adam Rose
                                                         Attorney for Plaintiff
                                                         Emma Hart

Table of Contents

I. INTRODUCTION ..........................................................................6

II. CASE HISTORY .........................................................................7

III. THEORIES OF THE CASE.........................................................10

IV. THE SETTLEMENT AGREEMENT ..........................................13

V. THE COURT SHOULD PRELIMINARILY APPROVE THE
   SETTLEMENT THAT WAS THE PRODUCT OF ARMS-
   LENGTH NEGOTIATIONS ............................15

VI. CERTIFICATION IS APPROPRIATE .........................................16

VII. THE PROPOSED CLASS NOTICE IS SUFFICIENT ..................19

VIII. THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE
    APPROVAL ...............................................................................19

IX. THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES..........20

X. THE SETTLEMENT DOES NOT UNFAIRLY GRANT
   PREFERENTIAL TREATMENT TO ANY CLASS MEMBERS .............21

XI. CONCLUSION ............................................................................22

MOTION FOR PRELIMINARY APPROVAL

## Table of Authorities

*Amchem Products, Inc. v. Windsor*, 521 US 591, 615, 117 S.Ct. 2231,
2246; ...................................................................................................... 14

*Ansari v. New York University* (S.D.N.Y. 1998) 179 F.R.D. 112, 114 ................... 12

*Blackwell v. SkyWest Airlines, Inc.* (S.D. Cal. 2007) 245 F.R.D. 453,
467 ......................................................................................................... 14

*Boyd v. Bechtel Corp.*, 485 F.Supp.610, 622 (N.D. Cal. 1979) ............................. 16

*Churchill Village v. General Electric*, 361 F.3d 566, 576-577 (9th Cir.
2004). ..................................................................................................... 12

*Custom LED, LLC v. eBay, Inc*., No. 12-cv-00350-JST, 2013 WL
6114379 ................................................................................................. 16

*Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 499953 ............... 11,15

*Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4[th] 36 (2010) ........................... 7

*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147,
156 ........................................................................................................ 13

*Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2011 U.S. Dist.
LEXIS 48878 ......................................................................................... 11

*In re Mego Fin'l Corp. Secur. Litig.* (9th Cir. 2000) 213 F3d 454, 462 ................. 13

*In re Netflix Privacy Litig*., No. 5:11-cv-00379-EJD, 2013 U.S. Dist.
LEXIS 37286 ......................................................................................... 12

*In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078, 1080 (N.D. Cal.
2007). ..................................................................................................... 15

*Miller v. Ghirardelli Chocolate Co*., No. 12-CV-04936-LB, 2015 WL
758094 ................................................................................................... 16

*Mullen v. Treasure Chest Casino, LLC* (5th Cir. 1999) 186 F3d 620, 627 ............ 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525
(C.D. Cal. 2004) ..................................................................................... 11

*O'Grady v. Merchant Exchange Prods., Inc. dba The Julia Morgan
Ballroom*, San Francisco Superior Court Case No. CGC-15-
547796 ..................................................................................................... 9

*Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1018 ...................................... 13

*Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). ........................................ 11

*Thorn v. Jefferson-Pilot Life Ins. Co.* (4th Cir. 2006) 445 F.3d 311, 318-
319 ......................................................................................................... 14

*Tijero v. Aaron Bros., Inc*., No. C10-01089-SBA, 2013 WL 60464 ...................... 17

*Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F3d 1227, 1231-1232 .................................................................................................................... 14

*Vega v. T-Mobile USA, Inc.* (11th Cir. 2009) 564 F.3d 1256, 1278 ........................ 14

*Vinh Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 18022393 ...................................................................................................... 17

## **Statutes**

Cal Lab. Code, § 351 ............................................................................................. 9

Cal Civ. Code, § 1559 ............................................................................................. 9

Los Angeles Mun. Code § 184.00 ........................................................................... 8

## **Other Authorities**

CACI No. 301 ........................................................................................................ 9

DLSE Manual § 45.3.4.1 ........................................................................................ 9

DLSE Opinion Letter 2000.11.02 ........................................................................... 7

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

## **Treatises**

Manual for Complex Litig., Third, § 30.41 (1995). ................................................ 11

Newberg, § 11.41 ................................................................................................. 12

MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff and proposed Class Representative Emma Hart ("Hart" or "Plaintiff") seeks preliminary approval of the proposed wage and hour class action settlement reached with Defendants Starwood Hotels & Resorts Worldwide, LLC[1] and Sheraton Operating Corporation ("Defendants") (collectively "the Parties") according to the terms and conditions set forth in the Class Action Settlement Agreement and General Release ("Settlement" or "Settlement Agreement"), a copy of which is attached to the declaration of Adam Rose as Exhibit "1" in compliance with Federal Rule of Civil Procedure Rule 23(e)(3).  The Parties reached the Settlement after extensive investigation, including a thorough analysis and review of Defendants' employment policies, service charge revenue and distribution records, Settlement Class Members' time and payroll records, and after attending a full-day mediation before an experienced mediator well-versed in wage and hour class actions, Lisa Klerman. The Settlement is strongly supported by experienced counsel, who carefully considered the strength of the claims and Defendants' potential defenses, as well as the expense, complexity, risks, and likely duration of continued litigation.  In light of the Parties' support for the Settlement, and because it satisfies all of the criteria for preliminary settlement approval under Federal Rule of Civil Procedure Rule 23, Hart seeks an order for the following: 1) granting preliminary approval, 2) certifying a settlement class, 3) approving the manner and form of providing notice to the class, 4) appointing the Frontier Law Center and Lichten & Liss-Riordan as class counsel, 5) appointing CPT Group as the claims administrator, and 6) establishing a timetable for final approval.

---

[1] Starwood Hotels & Resorts Worldwide, LLC was incorrectly named in the Complaint as Starwood Hotels & Resorts, LLC.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    <u>Factual Allegations</u>

This case involves the wage and hour claims brought by Plaintiff Emma Hart on behalf of herself and 91 former non-exempt employees of Defendants who worked at Spa Gaucin in the St. Regis Monarch Beach Resort in Dana Point at any time between October 11, 2013 to February 29, 2016 (the "Class Period"). Declaration of Adam Rose ("Rose Decl."), ¶ 3. During the Class Period, Spa Gaucin was operated by Defendant Sheraton Operating Corporation, which was a subsidiary of Defendant Starwood Hotels & Resorts Worldwide, LLC (previously known as Starwood Hotels & Resorts Worldwide, Inc.).  Plaintiff was employed by Defendants as a nail technician in Spa Gaucin from August 2012 until February 29, 2016. Rose Decl., ¶ 4. The Class Period ends as of February 29, 2016, the date Defendants terminated the employment of all spa personnel.  Rose Decl., ¶ 5.

Throughout the Class Period, Defendants ascribed a 20% "service charge" on spa services provided to customers at Spa Gaucin. Rose Decl., ¶ 6.  Hart's position is that the service charge was a tip that should have been distributed to her and the putative class members, since under Cal. Lab. Code, § 351, no employer shall collect, take, or receive any gratuity that is paid, given to, or left for an employee by a patron. Rose Decl., ¶ 6.

Hart also alleges that she and the putative class members were not able to take meal periods or rest periods while working at Spa Gaucin, as the appointments were scheduled in a way that made these meal periods and rest periods unfeasible. Additionally, Hart alleges that she had to perform off the clock work before and after her shifts and while she was clocked out for meal breaks, which included cleaning and organizing the spa area.

### B.    <u>Defendant Denies Hart's Class Action Claims</u>

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in this action and deny that the action is appropriate for class

treatment for any purpose other than this settlement.  Defendants maintain that they did not breach any contracts with Spa Gaucin's customers because the service charges were not tips and Defendants complied with representations made to Spa Gaucin's customers when distributing the majority of the service charge to Settlement Class Members.  Furthermore, Defendants contend that Plaintiff cannot prove that Defendants intended for Plaintiff and the putative class members to be the sole intended beneficiary to any contracts between Defendants and Spa Gaucin's customers.  Additionally, Defendants maintain that they complied with all meal and rest period obligations under California law, and that Plaintiff and all Settlement Class Members were properly provided with the opportunity to take all meal and rest periods to which they were entitled at all times during the Class Period.  Defendants also maintain that their timekeeping system automatically recorded a meal break premium each time a Settlement Class Member skipped a meal break, started a meal break after the fifth hour of work or took a break less than 30 minutes.  Defendants finally contend that, if this matter were to be litigated further, they would have strong defenses to class certification.   Defendants' policies prohibited off the clock work and Defendants deny that any off the clock work occurred in Spa Gaucin.

## C.     Procedural History and Discovery

Hart filed her putative class action Complaint in the Superior Court of the State of California, Orange County on October 11, 2017. Defendants removed the case to the United States District Court, Central District of California on November 17, 2017. The Complaint alleged causes of action for unfair competition, breach of contract relating to the service charges, meal break violations, and rest break violations. On December 27, 2017, Hart filed a First Amended Complaint, which clarified the appropriate defendants as Starwood Hotels and Resorts, LLC and Sheraton Operating Corporation. By way of the First Amended Complaint, Plaintiff dismissed Marriott International Inc., which never employed personnel at Spa Gaucin, and St. Regis Monarch Beach, which is a "dba."

Soon thereafter, the Parties' counsel discussed the factual and legal issues raised in the First Amended Complaint and agreed to attend private mediation to explore a possible settlement following the exchange of informal discovery. Rose Decl., ¶ 7.  At Hart's counsel's request, Defendants produced all putative class members' payroll records for the entire Class Period, all putative class members' time records from June 2015 through February 2016, Defendants' service charge revenue and distribution records for the entire Class Period, Plaintiff's personnel file, and wage and hour policies.  This information allowed Hart to make a reasoned opening demand and to have a productive arm's length negotiation. Rose Decl., ¶ 8.

The Parties attended an all-day mediation with private mediator Lisa Klerman on June 13, 2018. Rose Decl., ¶ 9.  During the mediation, the Parties engaged in good-faith, non-collusive negotiations and discussed the realistic damages exposure to Defendants, the relative strengths and weaknesses of Hart's claims, and the difficulty Hart may have in obtaining class certification.  At all times, the Parties' negotiations were conducted at arm's length between attorneys with substantial wage and hour class action experience.  At the end of the full-day mediation, the Parties reached an agreement to resolve these claims.   Hart filed a Second Amended

MOTION FOR PRELIMINARY APPROVAL

Complaint on September 5, 2018, which included additional causes of action arising from factual allegations that were raised during mediation. Subsequently, the Settlement Agreement was finalized on January 8, 2019.

## II.    THEORIES OF THE CASE

The central issue in this case is whether the 20% "service charge" Defendants automatically charged Spa Gaucin customers on spa services was a tip. According to DLSE Opinion Letter 2000.11.02 with the topic "Service Charge in Lieu of Tip," when an employer requires an employee to state that a tip was included in a service charge, it would lead a patron to believe the service charge was a tip.  Labor Code section 356 contains a strong public policy preventing fraud in connection with tipping:

> "[If a court were] faced with the question of whether a requirement by the employer that the employee mislead a patron into believing that a surcharge on a bill was, in fact, being paid to the employee, [it] would conclude that such an action was a fraud on the patron. Such a conclusion would lead to damages which would require that the employer disgorge the amount it had collected."

This is the remedy that Emma Hart is seeking in this case. Pointedly, the DLSE Manual continued:

> Although the Legislature has not legislated in the area of service charges, some local ordinances contain provisions that require the entire service charge to be paid to the employee who provided the service when the customer is required to pay a service charge. The reasoning is that customers, believing the charge will go the employee for providing the service does not also leave a gratuity. *See Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 36 (2010) (Upholding [local] hotel ordinance and holding no preemption or constitutional bar to enforcement.)

The issue in *Garcia* was whether the Los Angeles Hotel Service Charge Reform Ordinance, which required nonunionized hotels by the airport to pass along mandatory service charges to workers, was preempted by the Labor Code and was unconstitutional. *Id*. The Court of Appeal said no to both. *Id*.

The text of the Los Angeles Hotel Service Charge Reform Ordinance is

-10-

instructive for the reasoning behind the *Garcia* court's decision:

> "In recent years, hotels in the LAX area have instituted the practice of adding a "service charge" of 15% to 20% of the bill for banquets and other large group events. The service charge is typically listed as a line item on the bill. Some hotels pass a portion of the service charge to the workers who actually performed the services, while other hotels retain the entire service charge. Currently, there is nothing illegal about this practice. **Since hotels have instituted the practice of adding service charges to bills, many hotel workers have reported a significant reduction in the gratuities they receive from hotel guests.** Thus, many hotel customers reduce or eliminate gratuities [tips] they would otherwise pay to service workers because they assume that the workers receive the "service charges," which are added to their bills … Accordingly, **to the extent that LAX-area hotels institute or continue the practice of charging their customers "service charges," they will be required by this ordinance to pass the entire service charge on to the workers who actually performed the services for which the service charges are billed.** Whereas the LAX-area hotels derive a distinct benefit from their location near LAX, they have both the ability and responsibility to support the local workforce by engaging in fair employment practices."

Los Angeles Mun. Code § 184.00; emphasis added.

Although the City of Dana Point, which is where Spa Gaucin at the St. Regis Monarch Beach is located, does not have a local hotel ordinance, logically the service charges imposed at the St. Regis strongly dissuade customers to leave "additional" tips for hotel employees.

In *O'Connor v. Uber Technologies* 2013 WL 6354534 at *8-9 (N.D. Cal. Dec. 5, 2013), in which Shannon Liss-Riordan was counsel of record, the court confirmed a theory of recovery for class members when Uber communicated to patrons that an amount for gratuities was included in the fare, although the full gratuity was not passed along to the drivers. This is similar to what Hart alleges happened with her and the putative class members.

This theory is, however, unsettled in California. The question of whether a mandatory charge can constitute a gratuity under Cal. Lab. Code, § 351 is now pending on appeal in *O'Grady v. Merchant Exchange Prods., Inc. dba The Julia Morgan Ballroom*, San Francisco Superior Court Case No. CGC-15-547796, Order on Demurrer (Super. Ct. Cal. April 5, 2016), appeal pending, Court of Appeal, First Dist. Div. 2, A148513, where the court dismissed similar claims to those raised here, based on the conclusion that mandatory charges are not covered by the statute.

With the above principles in mind, the breach of contract cause of action in Hart's Second Amended Complaint is based on the implied contract that the putative class members are entitled to receive tips as third-party beneficiaries. California Civil Code section 1559 and CACI No. 301 provide that a contract made for the benefit of a third person may be enforced by the third person.

Hart alleges that she and the putative class members were third-party beneficiaries of the service charges and should have received the full value of the service charges for the spa services they performed.

As for the missed rest breaks claim, paragraph 12 of each Wage Order provides that every employer shall authorize and permit all employees to take rest periods at the rate of ten minutes net rest time per four hours, and if an employer does not provide a rest period, the employer shall pay the employee one hour of pay at the employee's regular rate (i.e., premium pay). Allowing employees to use toilet facilities during working hours does not meet the employer's obligations to provide rest periods as required by the IWC Orders. DLSE Manual § 45.3.4.1. Hart's position is the way Defendants scheduled Hart's and the putative class members' shifts made it virtually impossible to take rest breaks, let alone use the bathroom.

Finally, Hart alleges that she had to perform off the clock work before and after her shifts and while she was clocked out for meal breaks, which included cleaning and organizing the spa area. During mediation, Hart recognized the uncertainties of the meal and rest break claims, as well as the claims for off-the-clock

work, particularly the hurdles she would face in proving such claims on a class-wide basis.

## III.    THE SETTLEMENT TERMS

### A.    Settlement Class

Defendants will stipulate, for purposes of this Settlement only, to certification of a class defined as: "all non-exempt persons employed by any defendant at the St. Regis Monarch Beach in Spa Gaucin at any time between October 11, 2013 and February 29, 2016, which is the date Defendants stopped operating Spa Gaucin." ("Settlement Class" or "Settlement Class Members")  (Exhibit 1 to Rose Decl., ¶¶ 12, 79.)

### B.    Settlement Amounts

Defendants will pay a maximum of $185,000, which is referred to as the "Gross Fund Value."[2]  Exhibit 1, ¶ 17.  Defendants' share of the payroll taxes will not be deducted from the Gross Fund Value.  *Id.* ¶ 31; Rose Decl., ¶ 14.  Of the Gross Fund Value, Class Counsel requests an award of one-third to cover attorney fees ($61,667) (*Id.* ¶ 10), costs not to exceed $12,000 (*Id.*), Hart's Class Representative Enhancement Payment of $7,500 (*Id.* ¶ 35), and Claims Administration Costs of $10,000 (*Id.* ¶ 31).  This leaves a "Net Fund Value" of $93,883, of which twenty-one percent, estimated to be approximately $20,000, will be allocated for the meal and rest break and off the clock work claims and the remaining seventy-nine percent, estimated to be $73,833, for the service charge claim.  *Id.* ¶ 18; Rose Decl., ¶ 15.

Plaintiff submits that this agreement is an excellent result for the class, as her counsel calculated the total service charge damages at issue (i.e., the total amount of

---

[2] All defined terms herein have the same meaning as set forth in the Settlement Agreement.

service charges Defendants retained rather than distributing to the putative class members) to be approximately $120,000, meaning that even after deduction of attorney's fees, costs, and the Class Representative Enhancement Payment, the Settlement Class Members would still be receiving a fair proportion of their estimated damages on this claim. Rose Decl., ¶ 18. As for the meal and rest break and off-the-clock claims, $20,000 is a fair, even generous, settlement due to the significant hurdles Plaintiff would have faced in establishing this claim on a class-wide basis.  Rose Decl., ¶ 19.

The Settlement is non-reversionary (*Id.* ¶ 39), and the Settlement Class Members need not submit claim forms. Settlement Class Members will be provided notice and opportunity to opt out of the Settlement if they choose. Under the Settlement, the estimated $73,833 attributed to the service charge claim would be distributed in proportion to the amount of service charges each class member received while working for Defendants during the Class Period.  (*Id.* ¶ 18.)  For the estimated $20,000 attributed to the missed breaks and off the clock claims, the Settlement Agreement provides for a distribution in proportion to the number of hours worked during the Class Period.  Rose Decl., ¶ 16.  Based on the foregoing, the proposed settlement treats class members equitably relative to each other, in compliance with Federal Rule of Civil Procedure Rule 23(e)(2)(D).

Pursuant to the Settlement Agreement, notice of the Settlement will be sent to the Settlement Class Members by first-class mail. Prior to mailing, the Claims Administrator will perform a search based on the National Change of Address Database for information to update and correct any address changes.

# IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT THAT WAS THE PRODUCT OF ARMS-LENGTH NEGOTIATIONS

Approval of a proposed class action settlement under Fed. R. Civ. Pro. 23(e) involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice to the class members, whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) citing Manual for Complex Litig., Third, § 30.41 (1995).

At the preliminary approval stage, where the parties have reached a settlement prior to class certification, the court must peruse the proposed compromise to ratify both the propriety of class certification for settlement purposes and the fairness of the settlement. *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953, at *4 (N.D. Cal. Aug. 21, 2015) citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The purpose of the court's preliminary evaluation of the proposed settlement is to determine whether it is within the range of reasonableness and whether notice to the class of the settlement, and the scheduling of a fairness hearing, are worthwhile.

At the preliminary approval stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: 1) appears to be the product of serious, informed, non-collusive negotiations, 2) has no obvious deficiencies, 3) does not improperly grant preferential treatment to class representatives or segments of the class, and 4) falls within the range of possible approval … closer scrutiny is reserved for the final approval hearing. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *23-24 (N.D. Cao. Apr. 29, 2011).

Further, the fairness and reasonableness of a settlement agreement is presumed where, as here, the agreement was the product of non-collusive, arms-length negotiations conducted by capable and experienced counsel. *In re Netflix Privacy*

*Litig.*, No. 5:11-cv-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). As explained below, the settlement here was the product of a day-long arms-length negotiations with an experienced mediator well-versed in wage and hour class actions, Lisa Klerman.

Counsel's opinion that the settlement is fact and reasonable is entitled to great weight. *Churchill Village v. General Electric*, 361 F.3d 566, 576-577 (9th Cir. 2004). Also, there is a presumption of fairness when a proposed class settlement negotiated at arms' length by class counsel is presented for court approval. Newberg, § 11.41.

## V.    CERTIFICATION IS APPROPRIATE

There are four threshold requirements for class certification. They are the following: 1) numerosity, 2) commonality, 3) typicality, and 4) class representative adequacy. Discussion for each of these requirements follows.

The first consideration in certifying a class is whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class Members are defined as: "All persons who are employed or have been employed by any defendants at the St. Regis Monarch Beach Resort in Spa Gaucin at any time between October 11, 2013 and February 29, 2016." According to the timesheets and payroll data provided, there are 91 class members. The numerosity requirement provides that the class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find the numerosity requirement is satisfied when the class comprises *40 or more* members. *Ansari v. New York University* (S.D.N.Y. 1998) 179 F.R.D. 112, 114 (emphasis added). Therefore, numerosity is satisfied here.

Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met through the existence of a common contention that is capable of class-wide resolution in "one stroke." *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350. The tips, missed breaks, and off the clock

work issues are common to the Settlement Class Members who worked at Spa Gaucin under the same employment policies and practices.

Third, the claims and defenses of the class representative must be typical of the claims and defenses of the class. Fed. R. Civ. P. 23(a)(3). The claims of the entire class need not be identical, but the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members. *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156. Hart's claims are typical of the Settlement Class Members' claims, as they arise from the same practice that gives rise to the claims of other class members and are based on the same legal theory. *Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1018.

The final prerequisite to certifying a class is that the person representing the class must be able to "fairly and adequately protect the interests" of all members in the class. Fed. R. Civ. P. 23(a)(4). The representation is "adequate" if: the attorney representing the class is qualified and competent, the class representatives are not disqualified by interests antagonistic to the remainder of the class, and the named plaintiff must "prosecute the action vigorously" on behalf of the class. *In re Mego Fin'l Corp. Secur. Litig.* (9th Cir. 2000) 213 F3d 454, 462. These requirements are met based on Hart's attorneys' counsels' significant class action experience, the fact that Hart has no antagonistic interests, and the action was prosecuted vigorously and constituently to reach the settlement.

Also, pursuant to Fed. R. Civ. Pro. 23(b)(3), the court may find that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class actions is superior to other available methods for fairly and efficiently adjudicating the controversy. Predominance is determined not by counting the number of common issues but by weighing their significance. *Mullen v. Treasure Chest Casino, LLC* (5th Cir. 1999) 186 F3d 620, 627. The predominance requirement is met here since the class claims all stem from the working conditions at Spa Gaucin. All the potential claims relate solely to the spa

personnel, the service charges, alleged missed breaks, and alleged off the clock work. There are no divergent individual claims that would waver from the predominance requirement.

Further, the court must also find that the class action is superior to individual lawsuits for resolving the dispute. *See Amchem Products, Inc. v. Windsor*, 521 US 591, 615, 117 S.Ct. 2231, 2246; *Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F3d 1227, 1231-1232; *Blackwell v. SkyWest Airlines, Inc.* (S.D. Cal. 2007) 245 F.R.D. 453, 467.

Rule 23 lists four factors relevant to the decision whether a class action is superior, but the list is not meant to be exhaustive. The factors are:

- the interest of members of the class in individually controlling the prosecution or defense of separate actions;
- the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;
- the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
- the difficulties likely to be encountered in the management of a class action (generally referred to as its "manageability"). Fed. R. Civ. Pro. 23(b)(3)(A)-(D); *see Vega v. T-Mobile USA, Inc.* (11th Cir. 2009) 564 F.3d 1256, 1278; *Thorn v. Jefferson-Pilot Life Ins. Co.* (4th Cir. 2006) 445 F.3d 311, 318-319.

For the first factor, a class action is superior since there would be relatively small recoveries if the Settlement Class Members had to prosecute separate actions. For the second factor, a class action is superior since there are no other actions that comprise similar theories against Defendants. For the third factor, a class action is superior since the Central District of California is the desirable forum, as the hotel is based in Orange County. Finally, for the fourth factor, a class action is manageable here. The class size is small compared to other class actions, and if the case were to

1  proceed to trial, the proximity of the witnesses and evidence to the court would make
2  the case manageable. Rose Decl., ¶ 17.

3      For the above reasons, certification would be appropriate if the case did not
4  settle. However, since the case settled, the next step is to confirm that the proposed
5  notice to the class members is sufficient.

6

7  **VI.    THE PROPOSED CLASS NOTICE IS SUFFICIENT**

8      For a class certified under Rule 23(b)(3), the notice must clearly and concisely
9  state in plain, easily understood language: 1) the nature of the action, 2) the
10 definition of the certified class, 3) the class claims, issues, or defenses, 4) that a class
11 member may enter an appearance through an attorney, 5) that the court will exclude a
12 class member who requests exclusion, 6) the time and manner for requesting
13 exclusion, and 7) the binding effect of a class action judgment pursuant to Rule
14 23(c)(3). *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 499953, at *10
15 (N.D. Cal. Aug. 21, 2015).

16     Here the proposed Class Notice satisfies all these requirements and should be
17 approved by the Court. (Exhibit 2.)  Next, as explained below, the settlement terms
18 are within the range of possible approval.

19

20 **VII.  THE  SETTLEMENT  IS  WITHIN  THE  RANGE  OF  POSSIBLE**
21 **APPROVAL**

22     In evaluating the range of possible approval, which focuses on substantive
23 fairness and adequacy, courts consider plaintiff's expected recovery balanced against
24 the value of the settlement offer considering the risks of further litigation. *In re*
25 *Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).

26     The risks of further litigation include: a possibility Plaintiff could not prevail
27 on the service charge claim (as that issue remains unsettled in California); that the
28 Court could conclude that the class members were not third-party beneficiaries of the

service charges that were applied to Spa Gaucin's patrons (as this is an area of employment law with relatively little authorities); and that Plaintiff would not be able to prevail on her break and off the clock claims on a class-wide basis.

With these risks in mind, the next step is the evaluation of the terms of the settlement agreement. *Miller v. Ghirardelli Chocolate Co*., No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015). Hart's attorneys have analyzed the potential monetary value of the claims if they were to succeed at trial. Defendants provided documents and data to Plaintiff demonstrating that the amount of service charges not distributed to the employees was approximately 12.5%. As noted above, the portion of the settlement allocated to the service charge claim (even after deduction of fees and class representative enhancement) is an excellent result. As for the break and off the clock claims, the estimate based on hours worked was that the total could have been $30,000 in damages. Thus, $20,000 is an excellent allocation, and the $20,000 allocated to this claim is likewise a fair and reasonable settlement of a claim that is not only difficult to value but likely would have proven difficult to establish on a class-wide basis. Rose Decl., ¶ 18, 19.

Ultimately, after consideration of the settlement terms and assessment of the risks of further litigation, Hart's counsel, drawing on their experience and the input of mediator Lisa Klerman, determined that the Settlement is fair and reasonable and constitutes a positive result for the class. The Settlement falls within the range of possible approval, and the Court should grant this motion for preliminary approval. *See Boyd v. Bechtel Corp*., 485 F.Supp.610, 622 (N.D. Cal. 1979) (Recommendations of counsel should be given a presumption of reasonableness).

## VIII.  THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES

The court also considers whether there are obvious deficiencies in the settlement agreement that could include an overbroad release, insufficient notice, inadequate form of payment, or a *cy pres* beneficiary without a sufficient connection

to the class and underlying claims. *See, e.g.*, *Custom LED, LLC v. eBay, Inc*., No. 12-cv-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013). The *cy pres* beneficiary is the Working Wardrobes, which is an organization focused on helping workers. Rose Decl., ¶ 21.

Here, the Settlement Class Members will only release the claims contained in the Second Amended Complaint. The Parties have also constructed a formula for payments based on Settlement Class Members' service charge payments and hours worked for Spa Gaucin that ensures an equitable distribution of settlement funds. Additionally, the proposed Class Notice contains all the required information to the Settlement Class Members in an easy to read format.

## IX. THE SETTLEMENT DOES NOT UNFAIRLY GRANT PREFERENTIAL TREATMENT TO ANY CLASS MEMBERS

The court then assesses if the settlement allocation unfairly benefits certain class members. *Tijero v. Aaron Bros., Inc*., No. C10-01089-SBA, 2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013). This concept is supplemented by: "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel. *Vinh Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 18022393, at *5 (C.D. Cal. May 6, 2014).

Here, the Settlement Class Members will receive Individual Settlement Payments based on the amount of service charges already distributed to each Settlement Class Member in the course of their employment during the Class Period, and in proportion to the number of hours each Settlement Class Members worked during the Class Period for the portion of the settlement attributable to missed breaks and off the clock work. (Exhibit 1 ¶ 18.) These are fair formulas and there is no preferential treatment to any Settlement Class Member.

## X.    CONCLUSION

For the foregoing reasons, Hart respectfully requests that the Court grant preliminary approval of the proposed settlement, sign the proposed Order, approve and authorize mailing of the proposed Class Notice submitted herewith, and schedule a date for a final approval hearing.

Date: January 9, 2019                           FRONTIER LAW CENTER


                                                /s/ Adam Rose
                                                Attorney for Plaintiff
                                                Emma Hart