1  Adam Rose (210880)
adam@frontierlawcenter.com
2  FRONTIER LAW CENTER
23901 Calabasas Road, #2074
3  Calabasas, CA 91302
Telephone: (818) 914-3433
4  Facsimile: (818) 914-3433

5  Shannon Liss-Riordan (310719)
sliss@llrlaw.com
6  Lichten & Liss-Riordan
729 Boylston Street, #2000
7  Boston, MA 02116
Telephone: (617) 994-5800

8
Attorneys for Plaintiff
9  Emma Hart, individually and on behalf of a
class of similarly situated individuals

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14  EMMA HART, individually and on behalf  )  CASE NO.  8:17-cv-2021-JVS-KES
    of a class of similarly situated individuals,  )  CLASS ACTION
15                                          )
               Plaintiff,                   )  PLAINTIFF EMMA HART'S
16                                          )  MOTION FOR FINAL APPROVAL;
         v.                                 )  MEMORANDUM OF POINTS AND
17                                          )  AUTHORITIES; PROPOSED
    STARWOOD HOTELS AND RESORTS,            )  ORDER
18  LLC, SHERATON OPERATING                 )
    CORPORATION, and DOES 1 to 10,          )
19                                          )  Date: June 17, 2019
               Defendants.                  )  Time: 1:30 p.m.
20                                          )  Ctrm: 10C
                                            )
21                                          )

22

23

24

25

26

27

28

-1-
MOTION FOR FINAL APPROVAL

1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2 | Please take notice that on June 17, 2019 at 1:30 p.m. or as soon thereafter as may be

3 | heard in Courtroom 10C of the Southern Division of the Central District of

4 | California located at 411 W. Fourth St., Santa Ana, CA 92701, plaintiff Emma Hart

5 | will move the court for final approval of the class action settlement pursuant to Fed.

6 | R. Civ. Pro. 23(e)(2). The motion is based on this notice, the memorandum of points

7 | and authorities, the declaration of Adam Rose and its exhibits, the declaration of the

8 | settlement administrator, pleadings on file, and oral arguments at the hearing.

9 |

10 | Date: May 16, 2019                    FRONTIER LAW CENTER

11 |

12 |                                              /s/ Adam Rose
                                                 Attorney for Plaintiff
13 |                                              Emma Hart

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

Table of Contents

2

I.      INTRODUCTION. ....................................................................................6

3

II.     RELEVANT FACTS .................................................................................6

4

III.    LEGAL STANDARD.................................................................................7

5

IV.    DISCUSSION OF HANLON FACTORS ..................................................8

6

       A. STRENGTH OF THE CASE ................................................................8

7

       B. RISK, EXPENSE, AND LIKELY DURATION OF FURTHER
       LITIGATION          .................................................................................. 11

8

       C. RISK OF MAINTAINING CLASS ACTION STATUS .................................13

9

       D.THE AMOUNT OFFERED IN SETTLEMENT .................................................13

10

       E. EXTENT OF DISCOVERY COMPLETED .....................................................14

11

       F. EXPERIENCE AND VIEWS OF COUNSEL  .................................................15

12

       G. PRESENCE OF A GOVERNMENTAL PARTICIPANT ...............................15

13

       H. FINAL APPROVAL IS APPROPRIATE .........................................................15

14

V. DISCUSSION OF BLUETOOTH FACTORS ...............................................15

15

VI. CONCLUSION          .......................................................................................17

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

## **Cases**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) ....................14

*Ching v. Siemens Indus., Inc*., 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)......................................................................................................11, 15

*Churchill Village, LLC v. Gen. Elec*., 361 F.3rd 566, 576 (9th Cir. 2004)..............8

*Destefano v. Zynga, Inc*., 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016)........................................................................................................15

*Franco v. Ruiz Food Prod., Inc*., 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012)....................................................................................8, 11

*Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 36 (2010) ..........................9

*Hanlon v. Chrysler Corp*., 150 F.3d 1101 .............................................................7

*In re High-Tech Employee Antitrust Litig*., No. 11-cv-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015)..................................................13

*In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008) .............................8

*In re: Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935-946-47 (9th Cir. 2011)........................................................................................................15

*In re: TracFone Unlimited Serv. Plan Litig*., 112 F.Supp.3d 993, 1007 (N.D. Cal. 2015) ........................................................................................15

*Lane v. Facebook, Inc*., 696 F.3d 811, 818 (9th Cir. 2012) .....................................7

*Larsen v. Trader Joe's Co*., 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014)..................................................................................................16

*Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 454 (E.D. Cal. 2013)........................................................................................................14

*Moore v. PetSmart, Inc*., No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *6 (N.D. Cal. Aug. 4, 2015). ...................................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). .....................................................................................7

*Nwabueze v. AT & T Inc*., Civ. No. 09–1529 SI, 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013) ("*Nwabueze I*").............................................16

*O'Connor v. Uber Technologies* 2013 WL 6354534 at *8-9 (N.D. Cal. Dec. 5, 2013) ............................................................................................10

*O'Grady v. Merchant Exchange Prods., Inc. dba The Julia Morgan Ballroom*, San Francisco Superior Court Case No. CGC-15-547796 ..............10

MOTION FOR FINAL APPROVAL

*Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990) ...................................................................................................16

## **Statutes**

Cal Civ. Code, §1559 ...............................................................................10

Cal. Lab. Code, § 351 ............................................................................6, 10

Cal. Lab. Code, § 356 ................................................................................8

Los Angeles Mun. Code § 184.00 ...........................................................10

## **Other Authorities**

CACI No. 301 ...........................................................................................10

DLSE Manual § 45.3.4.1 ..........................................................................11

DLSE Opinion Letter 2000.11.02.............................................................8

## **Rules**

Fed. R. Civ. P. 23....................................................................................6, 7

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.    INTRODUCTION

3
Pursuant to Federal Rule of Civil Procedure 23(e)(2), Plaintiff Emma Hart ("Hart")

4
requests the Court finally approve the class action settlement with Defendants Starwood

5
Hotels & Resorts Worldwide, LLC and Sheraton Operating Corporation ("Defendants").

6
The Court previously reviewed the parties' settlement agreement with rigor

7
and scrutiny when it granted preliminary approval.  Nothing since that time should

8
alter the Court's conclusion that the settlement is fair, reasonable, and adequate.

9

10
## II.    RELEVANT FACTS

11
On February 21, 2019, this Court granted preliminary approval of a $185,000

12
*non-reversionary no-claim form* class action settlement between Hart and Defendants

13
("the Parties").  This case involves the wage and hour claims brought by Hart on

14
behalf of herself and 89 former non-exempt employees of Defendants who worked at

15
Spa Gaucin in the St. Regis Monarch Beach Resort in Dana Point at any time

16
between October 11, 2013 to February 29, 2016 (the "Class Period").  The essence of

17
the case is that while Hart worked at Spa Gaucin at the St. Regis Monarch Beach

18
Resort in Dana Point, Defendants ascribed a 20% "service charge" to its customers.

19
Hart's position has been that the service charge was a tip that should have went to

20
her and the class members, pursuant to Cal. Lab. Code § 351, which provides that no

21
employer shall collect, take, or receive any gratuity that is paid, given to, or left for

22
an employee by a patron.  Hart's secondary position was that she and the class

23
members were not able to take meal periods or rest periods while working at Spa

24
Gaucin, as the appointments were scheduled in a way that made these meal periods

25
and rest periods unfeasible.  Additionally, Hart alleged that she had to perform off

26
the clock work before and after her shifts and while she was clocked out for meal

27
breaks, which included cleaning and organizing the spa area.

28
///

1    Following this Court granting preliminary approval of the class settlement, the

2  notice procedures ordered by the Court were properly carried out.  The Court

3  approved notice was mailed to class members on March 28, 2019. Data about the

4  estimated payouts is attached to the settlement administrator's declaration.

5  (Declaration of Chris Lawless.)  The class members had 60 days, until May 27, 2019,

6  to opt out of or object to the settlement. (*Id.*)  There was only one opt out and no

7  objections to the settlement. (*Id.*) The average payment to each participating

8  Settlement Class Member is estimated at $1,062.73. (*Id.* ¶ 13.)  The highest payment

9  to a participating Settlement Class Member is estimated at $5,414.35.  (*Id.*)

10    Pursuant to the Parties' agreement, the settlement payment will be funded by

11  August 6, 2019, and the disbursements will be on August 20, 2019. The proceeds,

12  less incentive payment for Hart, Plaintiff's attorney fees and costs, and the amount of

13  settlement administration will be paid to the class members. No amount will revert to

14  Defendants.

15    Consistent with the Court's previous Order, and because the settlement has

16  received unanimous support by class members, the Court should grant final approval

17  of the class settlement.

18

19  **III.    LEGAL STANDARD**

20    A class action may be settled on with the court's approval. Fed. R. Civ. P.

21  23(e). "Approval under 23(e) involves a two-step process in which the Court first

22  determines whether a proposed class action settlement deserves preliminary approval

23  and then, after notice if given to the class members, whether final approval is

24  warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525

25  (C.D. Cal. 2004). At final approval, the inquiry is whether the settlement is fair,

26  adequate, and reasonable. *Lane v. Facebook, Inc*., 696 F.3d 811, 818 (9th Cir. 2012).

27    It is the settlement taken as a whole, rather than the component parts, that must

28  be examined for overall fairness. *Hanlon v. Chrysler Corp*., 150 F.3d 1101, 1026

1   (9th Cir. 1998). In making the inquiry, the court is mindful that the law favors

2   compromise and settlement of class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516

3   F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3rd

4   566, 576 (9th Cir. 2004).

5

6   **IV.     DISCUSSION OF HANLON FACTORS**

7       Evaluating a class action settlement at the final approval stage requires the

8   district court to balance the following factors: 1) strength of plaintiff's case, 2) risk,

9   expense, complexity, and likely duration of further litigation, 3) the risk of

10  maintaining class action status through trial, 4) the amount offered in settlement, 5)

11  the extent of discovery completed and the stage of the proceedings, 6) the experience

12  and view of counsel, 7) presence of a governmental participant, and 8) the reaction of

13  the class members to the settlement. *Hanlon,* 150 F.3d at 1026. There were no

14  objections or requests for exclusion; the remaining factors are analyzed below.

15

16  **A.     STRENGTH OF THE CASE**

17      The initial fairness factor addresses the likelihood of success on the merits and

18  the range of possible recovery. *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801,

19  at *11 (E.D. Cal. Nov. 27, 2012). The settlement has two components: the tips

20  portion, and the breaks and off the clock work portion.

21      The central issue in this case is whether the 20% "service charge" Defendants

22  automatically charged Spa Gaucin customers on spa services was a tip. The strength

23  of the case was that Spa Gaucin apparently did not inform its patrons that the 20%

24  service charge was not a gratuity that would go exclusively to the employees. Given

25  this lack of information, patrons were inclined not to tip the spa personnel.

26  According to DLSE Opinion Letter 2000.11.02 with the topic "Service Charge in

27  Lieu of Tip," when an employer requires an employee to state that a tip was included

28  in a service charge, it would lead a patron to believe the service charge was a tip.

1  Labor Code section 356 contains a strong public policy preventing fraud in

2  connection with tipping:

> "[If a court were] faced with the question of whether a requirement by the employer that the employee mislead a patron into believing that a surcharge on a bill was, in fact, being paid to the employee, [it] would conclude that such an action was a fraud on the patron. Such a conclusion would lead to damages which would require that the employer disgorge the amount it had collected."

7  This is the remedy that Emma Hart is seeking in this case. Pointedly, the DLSE

8  Manual continued:

> Although the Legislature has not legislated in the area of service charges, some local ordinances contain provisions that require the entire service charge to be paid to the employee who provided the service when the customer is required to pay a service charge. The reasoning is that customers, believing the charge will go the employee for providing the service does not also leave a gratuity. *See Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 36 (2010) (Upholding [local] hotel ordinance and holding no preemption or constitutional bar to enforcement.)

14  The issue in *Garcia* was whether the Los Angeles Hotel Service Charge

15  Reform Ordinance, which required nonunionized hotels by the airport to pass along

16  mandatory service charges to workers, was preempted by the Labor Code and was

17  unconstitutional. *Id.* The Court of Appeal said no to both. *Id.*

18  The text of the Los Angeles Hotel Service Charge Reform Ordinance is

19  instructive for the reasoning behind the *Garcia* court's decision:

> "In recent years, hotels in the LAX area have instituted the practice of adding a "service charge" of 15% to 20% of the bill for banquets and other large group events. The service charge is typically listed as a line item on the bill. Some hotels pass a portion of the service charge to the workers who actually performed the services, while other hotels retain the entire service charge. Currently, there is nothing illegal about this practice. **Since hotels have instituted the practice of adding service charges to bills, many hotel workers have reported a significant reduction in the gratuities they receive from hotel guests.** Thus, many hotel customers reduce or eliminate gratuities [tips] they would otherwise pay to service workers because they assume that the workers receive the "service charges," which are added to their bills … Accordingly, **to the extent that LAX-area**

-9-

1
2
3
4
5
6

**hotels institute or continue the practice of charging their customers "service charges," they will be required by this ordinance to pass the entire service charge on to the workers who actually performed the services for which the service charges are billed.** Whereas the LAX-area hotels derive a distinct benefit from their location near LAX, they have both the ability and responsibility to support the local workforce by engaging in fair employment practices."

7  Los Angeles Mun. Code § 184.00; emphasis added.

8  Although the City of Dana Point, which is where Spa Gaucin at the St. Regis
9  Monarch Beach is located, does not have a local hotel ordinance, logically the
10  service charges imposed at the St. Regis strongly dissuade customers to leave
11  "additional" tips for hotel employees.

12  In *O'Connor v. Uber Technologies* 2013 WL 6354534 at *8-9 (N.D. Cal. Dec.
13  5, 2013), in which Shannon Liss-Riordan was counsel of record, the court confirmed
14  a theory of recovery for class members when Uber communicated to patrons that an
15  amount for gratuities was included in the fare, although the full gratuity was not
16  passed along to the drivers. This is similar to what Hart alleges happened with her
17  and the putative class members.

18  This theory is, however, unsettled in California.  The question of whether a
19  mandatory charge can constitute a gratuity under Cal. Lab. Code, § 351 is now
20  pending on appeal in *O'Grady v. Merchant Exchange Prods., Inc. dba The Julia*
21  *Morgan Ballroom*, San Francisco Superior Court Case No. CGC-15-547796, Order
22  on Demurrer (Super. Ct. Cal. April 5, 2016), appeal pending, Court of Appeal, First
23  Dist. Div. 2, A148513, where the court dismissed similar claims to those raised here,
24  based on the conclusion that mandatory charges are not covered by the statute.

25  With the above principles in mind, the breach of contract cause of action in
26  Hart's Second Amended Complaint is based on the implied contract that the putative
27  class members are entitled to receive tips as third-party beneficiaries. California Civil

28

MOTION FOR FINAL APPROVAL

1  Code section 1559 and CACI No. 301 provide that a contract made for the benefit of
2  a third person may be enforced by the third person.

3      Hart alleges that she and the putative class members were third-party
4  beneficiaries of the service charges and should have received the full value of the
5  service charges for the spa services they performed.

6      As for the missed rest breaks claim, paragraph 12 of each Wage Order
7  provides that every employer shall authorize and permit all employees to take rest
8  periods at the rate of ten minutes net rest time per four hours, and if an employer
9  does not provide a rest period, the employer shall pay the employee one hour of pay
10 at the employee's regular rate (i.e., premium pay). Allowing employees to use toilet
11 facilities during working hours does not meet the employer's obligations to provide
12 rest periods as required by the IWC Orders. DLSE Manual § 45.3.4.1. Hart's position
13 is the way Defendants scheduled Hart's and the putative class members' shifts made
14 it virtually impossible to take rest breaks, let alone use the bathroom.

15     Finally, Hart alleges that she had to perform off the clock work before and
16 after her shifts and while she was clocked out for meal breaks, which included
17 cleaning and organizing the spa area. During mediation, Hart recognized the
18 uncertainties of the meal and rest break claims, as well as the claims for off-the-clock
19 work, particularly the hurdles she would face in proving such claims on a class-wide
20 basis.

21     While Hart was confident in the merits of the case, she was also an early
22 proponent of settlement.

23

24 **B.     RISK, EXPENSE, AND LIKELY DURATION OF FURTHER LITIGATION**

25     This factor relates to the probable costs, in both time and money, of continued
26 litigation. *Ching v. Siemens Indus., Inc*., 2014 WL 2926210, at \*4 (N.D. Cal. June
27 27, 2014). Unless the settlement is clearly inadequate, its acceptance and approval

28

MOTION FOR FINAL APPROVAL

1    are preferable to lengthy and expensive litigation with uncertain results. *Franco*,

2    2012 WL 5941801, at * 12.

3    Defendants deny any liability or wrongdoing of any kind associated with the

4    claims alleged in this action and deny that the action is appropriate for class

5    treatment for any purpose other than this settlement.  Defendants maintain that they

6    did not breach any contracts with Spa Gaucin's customers because the service

7    charges were not tips and Defendants complied with representations made to Spa

8    Gaucin's customers when distributing the majority of the service charge to

9    Settlement Class Members.  Furthermore, Defendants contend that Plaintiff cannot

10   prove that Defendants intended for Plaintiff and the putative class members to be the

11   sole intended beneficiary to any contracts between Defendants and Spa Gaucin's

12   customers.  Additionally, Defendants maintain that they complied with all meal and

13   rest period obligations under California law, and that Plaintiff and all Settlement

14   Class Members were properly provided with the opportunity to take all meal and rest

15   periods to which they were entitled at all times during the Class Period.  Defendants

16   also maintain that their timekeeping system automatically recorded a meal break

17   premium each time a Settlement Class Member skipped a meal break, started a meal

18   break after the fifth hour of work or took a break less than 30 minutes.  Defendants

19   finally contend that, if this matter were to be litigated further, they would have strong

20   defenses to class certification.  Defendants' policies prohibited off the clock work

21   and Defendants deny that any off the clock work occurred in Spa Gaucin.

22   The risk of proceeding further is that both sides were on uncharted territory.

23   There are composites of concepts from other cases that both sides could have used to

24   support their positions. This could have led to a rather involved and expensive class

25   certification motion.

26   Another risk of further litigation is the remote possibility that the court could

27   conclude that the class members were not third-party beneficiaries of the service

28   charges that were applied to Spa Gaucin's patrons, as this is an area of employment

-12-

1 law with scant authorities. There is the risk that Defendants would prevail in their

2 above referenced arguments and that the putative class would not be certified.

3 Nonetheless, the settlement has reached a method to solve the risk and expense of

4 further litigation.

5

6 **C.      RISK OF MAINTAINING CLASS ACTION STATUS**

7        This factor at times relates to the reality that a court may decertify a class at

8 any time. *Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at

9 *6 (N.D. Cal. Aug. 4, 2015). The risk of maintaining class action status was small if

10 the class were certified, however based on the above there was always a possibility

11 for decertification, which could have been based on new case or regulatory

12 developments. Given the risk, the settlement was the most favorable option.

13

14 **D.      THE AMOUNT OFFERED IN SETTLEMENT**

15       The settlement of $185,000. Hart's attorneys have analyzed the potential

16 monetary value of the claims if they were to succeed at trial. Plaintiff's counsel

17 calculated the total service charge damages at issue (i.e., the total amount of service

18 charges Defendants retained rather than distributing to the putative class members) to

19 be approximately $120,000.     For the missed break and off the clock claims, the

20 estimate of potential damaged based upon hours worked was $30,000 in damages.

21 Hart and the putative class members signed meal break waivers for shifts in which

22 they worked less than six hours. Defendants' time and payroll records showed that

23 Defendants automatically self-penalized and paid meal break premiums whenever

24 spa personnel worked at least five hours and their time records reflected a meal break

25 that was missed, short, or late. Defendants also paid a premium for any potential rest

26 break violations. Therefore, $20,000 is an excellent allocation towards these claims.

27       The settlement of $185,000 is 81% of Plaintiff's estimated potential value.

28 This places the settlement value well within the range of approval. See *In re High-*

1  *Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *4

2  (N.D. Cal. Sept. 2, 2015) (approving a settlement valued at 14% of available

3  damages). Another significant point is that there is no reversionary amount. *See, e.g.*,

4  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013)

5  (settlement term prohibiting reversion weighed in favor or preliminary approval).

6         Even after the deduction of attorney's fees, costs, and the Class Representative

7  Enhancement Payment, the Settlement Class Members would still be receiving a fair

8  proportion of their estimated damages on the claims.  The average payment to each

9  participating Settlement Class Member is estimated at $1,062.73. (Declaration of

10 Chris Lawless ¶ 13.)   The highest payment to a participating Settlement Class

11 Member is estimated at $5,414.35.  (*Id.*)

12        Accordingly, the amount offered in settlement continues to weigh in favor of

13 final approval.

14

15 **E.     EXTENT OF DISCOVERY COMPLETED**

16        Defendants produced the following discovery: 1) The St. Regis Monarch

17 Beach's Rest and Meal Break Period Policy from the Associate Handbook; 2) Hart's

18 Handbook Acknowledgment; 3) Hart's meal and rest break acknowledgment and

19 meal break waivers; 4) all St. Regis Monarch Beach spa personnel payroll records

20 from October 5, 2013 until February 26, 2016; 5) the time records for all St. Regis

21 Monarch Beach spa personnel from June 14, 2015 until February 25, 2016 for all spa

22 personnel, and 6) the Spa's General Ledger reflecting service charge revenue and

23 distributions

24        To broker a fair settlement, the parties must have enough information to

25 reasonably assess the case's strengths and value. *Acosta v. Trans Union, LLC*, 243

26 F.R.D. 377, 396 (C.D. Cal. 2007). A settlement following discovery and arm's-

27 length negotiations is presumed fair. *Nat'l Rural Telecommunications Corp.*, at 528.

28

MOTION FOR FINAL APPROVAL

1    The information that was provided gave a very good idea of the strengths and

2 weaknesses and value of the case. Accordingly, both sides had the necessary

3 information to reach a reasoned compromise.

4

5 **F.    EXPERIENCE AND VIEWS OF COUNSEL**

6    A district court is entitled to consider the opinions of competent counsel that

7 the settlement is fair, reasonable, and adequate. *Ching v. Siemens Industries, Inc.*,

8 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014). Here, counsel on both sides

9 believe the settlement is in the best interest of the class and provides noteworthy

10 monetary benefits.

11

12 **G.    PRESENCE OF A GOVERNMENTAL PARTICIPANT**

13    There is no governmental participant in this case.

14

15 **H.    FINAL APPROVAL IS APPROPRIATE**

16    Balancing the above *Hanlon* factors, final approval is appropriate.

17

18 **V.    DISCUSSION OF BLUETOOTH FACTORS**

19    When a settlement agreement is negotiated prior to contested class

20 certification, the parties must also show the settlement did not result from collusion.

21 *In re: Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935-946-47 (9th Cir. 2011).

22 The court must look for the "warning signs" of collusion: 1) whether class counsel

23 receives a disproportionate distribution of the settlement, 2) whether the parties

24 negotiate a clear sailing arrangement providing for attorney fees separate from class

25 funds without objection by the defendant, and 3) whether the parties arrange for fees

26 not awarded to revert to defendants rather than to be added to the class fund.

27 *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016).

28 ///

1    The Bluetooth factors are just warning signs to indicate the potential for
2 collusion, and the court is merely obligated to assure itself that the fees awarded in
3 the agreement were not unreasonably high considering the results obtained for the
4 class members. *In re: TracFone Unlimited Serv. Plan Litig*., 112 F.Supp.3d 993,
5 1007 (N.D. Cal. 2015).

6    Here, the first factor is not problematic. The requested fee award of 33.3% of
7 the recovery obtained is reasonable. In the Ninth Circuit, a 25% award is the
8 "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or
9 downwards if the record shows "'special circumstances' justifying a departure." *Six*
10 *(6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990).
11 When deciding if a departure from the benchmark is appropriate, courts may
12 consider "the result achieved, the risk involved in the litigation, the skill required and
13 quality of work by counsel, the contingent nature of the fee, awards made in similar
14 cases, and the lodestar crosscheck." *Nwabueze v. AT & T Inc*., Civ. No. 09–1529 SI,
15 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013) ("*Nwabueze I*").

16    Here, the uniqueness and complexity of the tip/service charge issue justifies a
17 departure from the benchmark. In any case, class counsel is not receiving a
18 disproportionate amount of the settlement.

19    For the second factor, there is no clear sailing agreement to pay fees
20 separately, so this factor does not present a barrier to final approval.

21    Finally, the agreement does not include a "kicker" provision that would allow
22 unclaimed funds to revert to Defendants. The absence of a kicker provision in the
23 settlement reduces the risk that the parties colluded to confer benefits on each other
24 at the expense of the class members. *Larsen v. Trader Joe's Co*., 2014 WL 3404531,
25 at *8 (N.D. Cal. July 11, 2014).

26    Thus, an analysis of the *Bluetooth* factors demonstrates there was no collusion
27 in reaching the settlement in this unique matter. There are ample and enough reasons
28 to grant final approval of the settlement.

-16-
MOTION FOR FINAL APPROVAL

**VI.    CONCLUSION**

 For the foregoing reasons, the Court should grant final approval of the settlement, and enter the proposed order and judgment.


Date:  May 31, 2019                          FRONTIER LAW CENTER


                                             /s/ Adam Rose
                                             Attorney for Plaintiff
                                             Emma Hart