Adam Rose (210880)
adam@frontierlawcenter.com
FRONTIER LAW CENTER
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Shannon Liss-Riordan (310719)
sliss@llrlaw.com
Lichten & Liss-Riordan
729 Boylston Street, #2000
Boston, MA 02116
Telephone: (617) 994-5800

Attorneys for Plaintiff
Emma Hart, individually and on behalf of a
class of similarly situated individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA HART, individually and on behalf of a class of similarly situated individuals,<br><br>              Plaintiff,<br><br>        v.<br><br>STARWOOD HOTELS AND RESORTS, LLC, SHERATON OPERATING CORPORATION, and DOES 1 to 10,<br><br>              Defendants. | CASE NO.   8:17-cv-2021-JVS-KES<br>CLASS ACTION<br><br>PLAINTIFF EMMA HART'S MOTION FOR ATTORNEY FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ADAM ROSE; PROPOSED ORDER<br><br>Date: June 17, 2019<br>Time: 1:30 p.m.<br>Ctrm: 10C |

-1-
MOTION FOR ATTORNEY FEES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on June 14, 2019 at 1:30 p.m. or as soon thereafter as may be heard in Courtroom 10C of the Southern Division of the Central District of California located at 411 W. Fourth St., Santa Ana, CA 92701, plaintiff Emma Hart will move the court for pursuant to Fed. R. Civ. Pro. 23(h) & 54(d)(2) for and order granting Plaintiff's request for attorney fees, costs, and class representative service award. The motion is based on this notice, the memorandum of points and authorities, the declaration of Adam Rose, and oral arguments at the hearing.

Date: May 28, 2019                                          FRONTIER LAW CENTER


                                                            /s/ Adam Rose
                                                            Attorney for Plaintiff
                                                            Emma Hart

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.      INTRODUCTION

Plaintiff hereby requests Court approval of the application for attorney fees and costs, and class representative award. Plaintiff is seeking 33.3% of the total settlement for attorney fees, which is $61,666.66, costs of $9,159.66, settlement administration of $9,250, and a class representative service award of $7,500.

II.     LEGAL STANDARD

In a class action settlement, the court may award attorney fees and costs that are authorized by law or the parties' agreement. Fed. R. Civ. Pro. 23(h). Courts may award attorney fees and costs where a litigant proceeding in a representative capacity secures a substantial benefit for a class of persons. Serrano v. Priest, 20 Cal.3d 25, 38 (1977). The two methods for determining reasonable attorney fees are the lodestar/multiplier method and the percentage of recovery method. *Wershba v. Apple Computer, Inc*., 91 Cal.App.4th 224, 254 (2001).

When the plaintiff brings only state law claims, the court looks to the state's law in deciding the method. *Hendricks v. Starkist Co*., 2016 WL 5462423, at *10 (N.D. Cal. 2016). The California Supreme Court has endorsed the percentage method based on its relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides to counsel to seek an early settlement and avoid unnecessarily prolonging the litigation. Lafitte v. Robert Half International, Inc., 1 Cal.5th 480, 503 (2016) (approving attorney fees of one-third of gross settlement).

The Ninth Circuit and most federal courts are in accord. *Aichele v. City of Los Angeles*, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015). A principal advantage of the percentage method is that it is result-oriented. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995).

1  The percentage method also ensures that attorneys receive compensation for the true
2  value of their services and skills. *Id*. at 307.

3      Plaintiff-side contingency practice on behalf of low-wage workers, who cannot
4  afford to pay out of pocket for counsel, is made possible by a system where counsel
5  can obtain contingency fee awards for cases that are successful – accordingly, the
6  court should use the percentage method for attorney fees in this case.

7

8  III.    DISCUSSION

9      Federal courts applying California law on a motion for attorney fees use the
10  25% benchmark as a starting point in evaluating the request for fees. *Schiller v.*
11  *David's Bridal, Inc*., 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012). Here,
12  Plaintiff is requesting a fee award of 33.3%.

13      A district court may adjust from the benchmark if courts may adjust this figure
14  upwards or downwards if the record shows special circumstances justifying a
15  departure. *Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014). When deciding if
16  a departure from the 25 percent benchmark is appropriate, courts may consider "the
17  result achieved, the risk involved in the litigation, the skill required and quality of
18  work by counsel, the contingent nature of the fee, awards made in similar cases, and
19  the lodestar crosscheck." *Nwabueze v. AT & T Inc*., Civ. No. 09–1529 SI, 2013 WL
20  6199596, at *10 (N.D.Cal. Nov. 27, 2013) ("*Nwabueze I* "); see also *In re Quintus*
21  *Sec. Litig*., 148 F.Supp.2d 967, 973–74 (N.D.Cal.2001) (noting that courts consider
22  six factors when determining whether to adjust the benchmark percentage, including
23  "(1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's
24  experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-
25  payment assumed by counsel; (7) the reaction of the class; and (8) comparison with
26  counsel's lodestar".

27      As explained below, an adjustment to 33.3% is appropriate here since the
28  uniqueness of the theories and the complexity of issues warrants it.

A.     RESULT OBTAINED FOR THE CLASS

Plaintiff achieved substantial relief for the class members based on the unusual theories presented in this case. For the 90 class members, of the total $185,000 gross settlement, the majority will go toward the service charge/tip claim which is the unique theory in the case, and the minority will go toward the missed breaks claim.

As explained in the motions for preliminary and final approval, Plaintiff's counsel calculated the total service charge damages at issue (i.e., the total amount of service charges Defendants retained rather than distributing to the putative class members) to be approximately $120,000.

For the missed break and off the clock claims, the estimate of potential damaged based upon hours worked was $30,000 in damages.  Hart and the putative class members signed meal break waivers for shifts in which they worked less than six hours.  Defendants' time and payroll records showed that Defendants automatically self-penalized and paid meal break premiums whenever spa personnel worked at least five hours and their time records reflected a meal break that was missed, short, or late.  Defendants also paid a premium for any potential rest break violations.  Therefore, $20,000 is an excellent allocation towards these claims.

The settlement of $185,000 is 81% of Plaintiff's estimated potential value. This places the settlement value well within the range of approval. See *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving a settlement valued at 14% of available damages). Another significant point is that there is no reversionary amount. See, e.g., *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Even after deduction of attorney's fees, costs, and the Class Representative Enhancement Payment, the Settlement Class Members would receive a fair proportion of their estimated damages on the claims.  The average payment to each participating Settlement Class Member is estimated at $1,062.73. Accordingly, The amount offered in settlement continues to weigh in favor of final approval.

-5-

B.     EFFORT EXPENDED BY COUNSEL, AND COUNSEL'S EXPERIENCE AND SKILL

Prosecuting class actions requires an extraordinary commitment of time, resources, and energy from class counsel, and many times settlements are not possible but for the commitment and skill of class counsel. *Garner v. State Farm Mut. Auto Ins. Co.,* 2010 WL 1687829, at *2 (N.D. Cal. 2010). This is particularly so where a case raised numerous novel and complex issues both of law and fact and required a considerable effort from class counsel to be to file suit and litigate the case successfully. Id.

For Ms. Liss-Riordan, she has a bevy of experience in employment law cases involving tip issues. For Mr. Rose, he also has significant experience in a wide variety of employment law cases and issues as explained in the attached declaration.

This case was filed on the cutting edge of law regarding hotel service charges and tips. The research and analysis regarding how tips and service charges are evolving was arguably the linchpin in this case. It follows that the class members were represented by highly experienced counsel who focus on wage and hour class actions. The experience and open mindedness for this area of law, in addition to the result obtained for the class, justify the increased fee request.

C.     COMPLEXITY OF THE ISSUES

The central issue in this case is whether the 20% "service charge" Defendants automatically charged Spa Gaucin customers on spa services was a tip. The strength of the case was that Spa Gaucin apparently did not inform its patrons that the 20% service charge was not a gratuity that would go exclusively to the employees. Given this lack of information, patrons were inclined not to tip the spa personnel. According to DLSE Opinion Letter 2000.11.02 with the topic "Service Charge in Lieu of Tip," when an employer requires an employee to state that a tip was included in a service charge, it would lead a patron to believe the service charge was a tip.

1    Although the City of Dana Point, which is where Spa Gaucin at the St. Regis
2    Monarch Beach is located, does not have a local hotel ordinance governing service
3    charges, logically the service charges imposed at the St. Regis strongly dissuade
4    customers to leave "additional" tips for hotel employees.

5    In *O'Connor v. Uber Technologies* 2013 WL 6354534 at *8-9 (N.D. Cal. Dec.
6    5, 2013), in which Shannon Liss-Riordan was counsel of record, the court confirmed
7    a theory of recovery for class members when Uber communicated to patrons that an
8    amount for gratuities was included in the fare, although the full gratuity was not
9    passed along to the drivers. This is similar to what Hart alleges happened with her
10   and the putative class members.

11   This theory is, however, unsettled in California.  The question of whether a
12   mandatory charge can constitute a gratuity under Cal. Lab. Code, § 351 is now
13   pending on appeal in *O'Grady v. Merchant Exchange Prods., Inc. dba The Julia
14   Morgan Ballroom*, San Francisco Superior Court Case No. CGC-15-547796, Order
15   on Demurrer (Super. Ct. Cal. April 5, 2016), appeal pending, Court of Appeal, First
16   Dist. Div. 2, A148513, where the court dismissed similar claims to those raised here,
17   based on the conclusion that mandatory charges are not covered by the statute.

18   With the above principles in mind, the breach of contract cause of action in
19   Hart's Second Amended Complaint is based on the implied contract that the putative
20   class members are entitled to the tips as third-party beneficiaries. California Civil
21   Code section 1559 and CACI No. 301 provide that a contract made for the benefit of
22   a third person may be enforced by the third person. Hart alleges that she and the
23   putative class members were third-party beneficiaries of the service charges and
24   should have received the full value of the service charges for their spa services.

25   As for the missed rest breaks claim, paragraph 12 of each Wage Order
26   provides that every employer shall authorize and permit all employees to take rest
27   periods at the rate of ten minutes net rest time per four hours, and if an employer
28   does not provide a rest period, the employer shall pay the employee one hour of pay

1  at the employee's regular rate (i.e., premium pay). Allowing employees to use toilet
2  facilities during working hours does not meet the employer's obligations to provide
3  rest periods as required by the IWC Orders. DLSE Manual § 45.3.4.1. Hart's position
4  is the way Defendants scheduled Hart's and the putative class members' shifts made
5  it virtually impossible to take rest breaks, let alone use the bathroom.

6        The issues presented in this case were complex, which is another basis to
7  justify the increased fee request.

8

9  D.    RISK OF NONPAYMENT INCURRED BY COUNSEL

10       The contingent nature of litigating a class action and the financial burden
11  assumed typically justifies an increase from the 25% benchmark, as counsel litigates
12  with no payment and no guarantee that the time or money expended will result in a
13  recovery. *Bower v. Cycle Gear, Inc*., 2016 WL 4439875, at \*7 (N.D. Cal. 2016); see
14  also Hendricks, 2016 WL 5462423, at \*12 (finding that enhancement from 25%
15  benchmark was warranted because class counsel carried a substantial financial
16  burden both in advancing out-of-pocket costs and in representing plaintiff and the
17  class on a contingency basis.)

18       Here, counsel have litigated the case since October 2017. Further, as discussed
19  in *Vizcaino v. Microsoft Corporation*, 290 F.3d 1043 (9th Cir. 2002), the fees
20  awarded in this case will be used to support future cases on behalf of California
21  workers as will as providing compensation for counsel for past and future cases
22  where the risks result in no award.

23

24  E.    REACTION OF THE CLASS

25       The absence of a large number of objections to a proposed class action
26  settlement raises a strong presumption that the terms are favorable. *Nat'l Rural*
27  *Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).
28  Here, there were no objections, and only one opt-out, meaning a favorable reaction.

F.     A LODESTAR CROSS-CHECK, IF APPLIED, SUPPORTS THE
ATTORNEY FEES REQUEST

Both federal and state courts may employ a lodestar cross-check on a request
for a percentage of the fund for attorney fees. *Lafitte v. Robert Half International,
Inc.*, 1 Cal.5th 480 (2016). However, the cross-check is not required. Id. Plaintiff
submits that a cross-check is not necessary in this case. However, if the court were to
apply a cross-check, it would support the requested 33.3% in fees.

Here, the lodestar is currently approximately $850,000. In order to calculate
the lodestar for the cross-check purpose, Plaintiff has submitted the declaration of
Adam Rose which attests to the hours of the people who worked on this case.
Estimates are sufficient documentation of the hours worked under the lodestar
analysis. *Lafitte*, 1 Cal. 5th at 505 (detailed time sheets are not required as part of a
lodestar calculation, whether cross-check or otherwise). Thus, since this case was
efficiently litigated, there is no need for the Court to comb through records of
numerous attorneys and staff.

Also, to determine a reasonable hourly rate, courts look to the rates for
comparable legal services in the community, in this case the Central District. E.g.,
*Gong-Chun v. Aetna, Inc*., 2012 WL 2872788, at *21 (E.D. Cal. July 12, 2012).
"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees
in the community, and rate determinations in other cases, particularly those setting a
rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market
rate." *United Steelworkers of America v. Phelps Dodge Corp*., 896 F.2d 403, 407
(9th Cir. 1990).

In Los Angeles, hourly rates between $485 and $750 are common. See, e.g.,
*Counts v. Meriwether*, 2016 WL 1165888, *3–4 (C.D. Cal. 2016) (finding hourly
rates of $701.25, $552.50, and $446.25 per hour "reasonable and consistent with the
prevailing rates in the Central District"); *Rodriguez v. City of L.A*., 96 F.Supp.3d
1012, 1023 (C.D. Cal. 2014) (approving rates from $500 to $975); (see also Dkt.

-9-

218–1, Fees Brief at 19) (quoting a National Law Journal survey of regional billing rates published in 2014, showing standard partner rates among top Los Angeles firms ranging from $490 to $975).

As discussed in the motions for preliminary and final approval, Plaintiff achieved an excellent result for the class. The novelty of the questions involved, and the skill required to recognize and litigate them demonstrate that using the lodestar cross-check the fees are justified.

## IV.   THE CLASS REPRESENTATIVE SERVICE ENHANCEMENT FOR EMMA HART IS REASONABLE

Class representatives are generally entitled to a service award for initiating the litigation and incurring risk. See, e.g., Covillo v. Specialty's Café, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014). Here, the requested service enhancement is $7,500 for Emma Hart. This amount is reasonable since it is just 4% of the gross settlement.

Further, the incentive payment/service enhancement is warranted by Emma Hart's persistence and perseverance in moving the case forward. Ms. Hart was involved in multiple conference calls and participated in a nearly 14-hour long mediation. Ms. Hart worked closely with class counsel to coordinate with the nuanced issues in this case. Thus, the requested enhancement is reasonable.

## V.   CONCLUSION

Based on the foregoing arguments and the declaration of Adam Rose, Plaintiff respectfully requests the court to grant the motion for attorney fees, costs, and service enhancement to Emma Hart.

Date:  June 4, 2019                                LAW OFFICE OF ROBERT STARR

                                                   /s/ Adam Rose
                                                   Attorney for Plaintiff
                                                   Emma Hart