JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

Present: The Honorable      **James V. Selna, US District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:      **(IN CHAMBERS) Order Regarding Motion for Final Approval of Settlement Agreement and Motion for Attorney Fees, Costs, and Class Representative Award**

Following execution of the Court's order granting preliminary settlement approval and directing notice be provided to proposed Settlement Class Members, Plaintiff Emma Hart ("Plaintiff") on behalf of herself and putative class members moves for (1) final approval of a Settlement Agreement with Defendants Starwood Hotels and Resorts, LLC and Sheraton Operating Corporation ("Defendants"), Mot., Docket No. 43, and (2) attorney fees, costs, and class representative service award, Mot., Docket No. 44. For purposes of the Settlement Agreement, Defendants do not oppose class certification. Settlement Agreement, Docket No. 37-1 ¶¶ 12, 79.

For the following reasons, the Court **certifies** the proposed Settlement Class, **grants** with exception the final approval of the Settlement Agreement, and **grants** with exception the motion for attorney fees and costs.

### I. BACKGROUND

This case involves the wage and hour claims brought by Plaintiff on behalf of herself and 91 former non-exempt employees of Defendants who worked at Spa Gaucin in the St. Regis Monarch Beach Resort in Dana Point, California, between October 11, 2013 to February 29, 2016 (the "Class Period"). Rose Decl., Docket No. 37 ¶ 3. During the Class Period, Defendant Sheraton Operating Corporation, a subsidiary of Defendant Starwood Hotels & Resorts Worldwide, LLC, operated Spa Gaucin. Mot., Docket No. 36 at 7. Plaintiff was employed by Defendants as a nail technician in Spa Gaucin from

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

August, 2012, until February 29, 2016, the date Defendants stopped operating the spa. Rose Decl., Docket No. 37 ¶ 4, 5.

Plaintiff claims that Defendants violated Cal. Lab. Code § 351 by charging a 20% service charge to spa customers that was a tip that should have been distributed to her and other putative Class Members. Id. ¶ 6. Since customers paid the 20% service charge, Plaintiffs indicate that they are dissuaded from leaving what they may consider to be "additional" tips to the spa employees. Mot. Preliminary Approval, Docket No. 36 at 11. In addition, Hart alleges that she and other putative Class Members were unable to take all meal periods or rest periods while working at Spa Gaucin because the appointments were scheduled such that those breaks were unfeasible. Id. at 7. Defendants deny any liability or wrongdoing with respect to these claims. Id.

Plaintiff filed her putative class action complaint in the Superior Court of California, Orange County, on October 11, 2017, alleging causes of action for unfair competition, breach of contract with respect to the service charges, and meal and rest break violations. Complaint, Docket No. 1-3. Defendants removed the action to the United States District Court, Central District of California, on November 17, 2017. Not., Docket No. 1. On December 27, 2017, Plaintiff filed a First Amended Complaint ("FAC") clarifying the appropriate defendants. FAC, Docket No. 12.

The parties attended private mediation and an exchange of informal discovery, in which Defendants produced all putative Class Members' payroll records for the Class Period and time records from June, 2015, through February, 2016; Defendants' service charge revenue and distribution records for the Class Period; Plaintiff's personnel file and wage and hour policies. Rose Decl., Docket No. 37 ¶ 8. On June 13, 2018, the parties attended an all-day, thirteen-hour mediation with private mediator Lisa Klerman ("Klerman"). Id. ¶ 9. At the end of the full-day mediation, the parties reached an agreement to resolve Plaintiff's claims. Mot. Preliminary Approval, Docket No. 36 at 9.

On September 5, 2018, Plaintiff filed a Second Amended Complaint ("SAC"), which included additional causes of action arising from factual allegations that were raised during mediation, including allegations of off-the-clock work and an accompanying failure to pay minimum and overtime wages owed upon termination. Settlement Agreement, Docket No. 37-1 ¶ 2. Subsequently, the parties finalized the

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

Settlement Agreement on January 8, 2019. Mot. Preliminary Approval, Docket No. 36 at 10.

### A.    Summary of the Settlement

### 1.    The Proposed Settlement Class

Pursuant to the Settlement Agreement, the proposed settlement class is an opt-out class that consists of "all non-exempt persons employed by any defendant at the St. Regis Monarch Beach in Spa Gaucin at any time between October 11, 2013 and February 29, 2016, which is the date Defendants stopped operating Spa Gaucin." Settlement Agreement, Docket No. 37-1 ¶ 12. The proposed settlement class covers 91 former employees of Spa Gaucin. Rose Decl., Docket No. 37 ¶ 3.

### 2.    Settlement Amount

The Settlement Agreement provides that Defendants will pay a maximum of $185,000 (the "Gross Fund Value") from which Defendants' share of payroll taxes will not be deducted. Settlement Agreement, Docket No. 37-1 ¶¶ 17, 32. The Gross Fund Value includes the following: (1) individual settlement payments to participating Settlement Class Members, (2) the Class Representative Enhancement Payment, all Claims Administration Costs to the Claims Administrator up to $10,000, and the award of attorneys' fees and costs. Id. ¶¶ 17, 35.

The Net Fund Value is the Gross Fund Value minus the Court-approved Class Representative Enhancement Payment, attorneys' fees and costs, and Claims Administration Costs from which individual settlement payments are made to Class Members. Id. ¶ 19. The Net Fund Value is calculated to be $93,833. Notice of Settlement, Docket No. 43-1 at 7. The average payment to each participating Settlement Class Member is estimated at $1,062.73. Decl. of Chris Lawless, Docket No. 43-1 ¶ 13. The highest payment to a participating Settlement Class Member is estimated at $5,414.35. Id.

### 3.    Class Representative Enhancement Award

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-2021JVS(KESx)                    Date   June 24, 2019

Title   Emma Hart v. Marriott International, Inc.

Plaintiff requests an award of $7,500 for the Class Representative Enhancement Payment.[1]

### 4.   Attorneys' Fees and Costs

Class counsel requests one-third of the Gross Fund Value, or $61,666.66, for attorneys' fees, as well as costs of $9,159.66.[2] Mot. For Attorney Fees, Costs, Docket No. 44 at 3.

### 5.   Claims Administration Costs

The proposed Settlement Agreement provides that the Claims Administrator, CPT Group, will be paid an amount not to exceed $10,000. Settlement Agreement, Docket No. 37-1 ¶ 35. The Claims Administrator will charge $9,250. Decl. of Chris Lawless, Docket No. 43-1 ¶ 14.

### 6.   Calculation of Settlement Payments

The proposed Settlement Agreement provides that 21 percent of the Net Fund Value will be distributed to Settlement Class Members in proportion to the hours worked during the Settlement Period,[3] and 79 percent will be distributed in proportion to the amount of service charges received during the Class Period.[4] Settlement Agreement, Docket No. 37-1 ¶ 21, 37. Each individual settlement payment will be reduced by any legally mandated employee tax withholdings for each participating Class Member. Id. ¶ 37. Any checks issued by the Claims Administrator to participating Class Members that are returned as undeliverable or that remain uncashed for more than 120 days after issuance will revert to the Unclaimed Settlement Fund, which would be redistributed as

---

[1] The Class Representative Enhancement Payment is to be made in addition to the individual settlement payments awarded to Plaintiff under the Settlement Agreement. Settlement Agreement, Docket No. 37-1 ¶ 34.

[2] The proposed Settlement Agreement specifies that one-half of the Class Counsel Award is to be distributed to Frontier Law Center and the other half to Lichten & Liss-Riordan. Id. ¶ 33.

[3] Plaintiff indicates that $20,000 is attributed to settlement for the alleged meal and rest break violations. Mot. Preliminary Approval, Docket No. 36 at 14.

[4] Plaintiff indicates that approximately $73,833 is attributed to settlement for the service charge claim. Id.

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

checks to Class Members who cashed their checks on a pro rata basis if the residual payment amounts to at least $50. Id. ¶ 38. Funds from uncashed redistribution checks shall be distributed to a cy pres fund, which is to be donated to Working Wardrobes no later than 140 days after the issuance of the redistributed checks. Id.

### B. Preliminary Approval

On February 21, 2019, the Court granted preliminary certification of the proposed Settlement Class and granted Plaintiff's motion for preliminary approval of the Settlement. Order, Docket No. 42-1.

### C. Notice

Since the Court granted preliminary approval of the settlement, the Claims Administrator has prepared a draft of the Notice of Class Action Settlement and received approval of the drafts from the parties. Decl. of Chris Lawless, Docket No. 43-1 ¶ 5. On March 13, 2019, the Claims Administrator received the data files from Defendant containing the name, last known address, telephone number, Social Security number, dates of employment, job title, total amount of service charges, and the total amount of hours worked by each Class member during the Settlement Period. Id. ¶ 6. The data included information for 90 Class members and indicated that the Class size is 90. Id.

On March 27, 2019, the Claims Administrator performed a National Change of Address (NCOA) search in an attempt to update the class list of addresses as accurately as possible. Id. ¶ 7. The Notices of Settlement were enclosed in envelopes with the names and known addresses printed on them. Id. ¶ 8. On March 28, 2019, the Notices of Settlement were mailed via U.S. first-class mail to all Class members. Id. ¶ 9. As of June 7, 2019, five (5) Notices of Settlement have been returned to the Claims Administrator. Id. Of those returned, eight (8) were re-mailed and as of June 7, 2019, zero (0) undeliverable Notices of Settlement remain.[5] Id.

### D. Objections and Exclusions

---

[5]The Court requests clarification at oral argument as to the number of undeliverable Notices of Settlement that were re-mailed of the five (5) returned to the Class Administrator.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-2021JVS(KESx)                    Date   June 24, 2019

Title   Emma Hart v. Marriott International, Inc.

The last date for Class members to opt-out or object to the settlement or
dispute their service charge or hour calculations was May 27, 2019. Id. ¶ 10. As of June
7, 2019, the Claims Administrator has received one (1) request for exclusion and no
objections to the settlement. Id. ¶¶ 10-11.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action
settlements. Fed. R. Civ. P. 23(e). When a class action reaches a settlement agreement
before class certification, a court uses a two-step process to approve a class-action
settlement. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). First, the court must
certify the proposed settlement class. Id. Second, the court must determine whether the
proposed settlement is fundamentally fair, adequate, and reasonable. Id.

After certifying a class, a court must determine whether the proposed settlement is
fundamentally fair, adequate, and reasonable. Lane v. Facebook, Inc., 696 F.3d 811, 818
(9th Cir. 2012).

## III. DISCUSSION

**A.      Certification of the Proposed Settlement Class**

**1.      The Proposed Settlement Class Meets the Requirements of Fed. R. Civ.
        Pro. 23(a).**

Preliminary approval of class certification was granted on February 21, 2019.
Order, Docket No. 42-1. The Court is not aware of any new information that would
change its conclusion. However, Court reviews here its reasoning for reaching that
conclusion.

Federal Rule of Civil Procedure 23(a) imposes four prerequisites for class actions:
(1) the class is so numerous that a joinder of all members is impracticable (numerosity);
(2) there are questions of law or fact common to the class (commonality); (3) the claims
or defenses of the representative parties are typical of the claims or defenses of the class
(typicality); and (4) the representative parties will fairly and adequately protect the

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

interests of the class (adequacy). Fed. R. Civ. P. 23(a); <u>United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.</u>, 593 F.3d 802, 806 (9th Cir. 2010).

### a.   Numerosity

Under Rule 23(a)(1), a class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Because this requirement is not tied to a fixed numerical threshold, a court needs to examine the specific facts of each case. <u>Rannis v. Recchia</u>, 380 Fed. App'x 646, 651 (9th Cir. 2010). Typically, courts have found that the numerosity requirement is satisfied when the proposed class includes at least forty members. <u>Id.</u> Here, there are 90 proposed Class Members.[6] Decl. Of Chris Lawless, Docket No. 43-1 ¶ 6. Accordingly, the Court finds that joinder of individual members is impracticable.

### b.   Commonality

Rule 23(a)(2) requires that there are common questions of law or fact. Fed. R. Civ. P. 23(a)(2). However, to satisfy this rule, all questions of fact and law do not need to be common. <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). For instance, a class meets the commonality requirement if members share the same legal issues but have different factual foundations. <u>Id.</u> In addition, commonality is satisfied if members of the class share a common core of facts but have different legal remedies. <u>Id.</u>

Plaintiff asserts that the tips, missed breaks, and off-the-clock work issues are common to the proposed Class Members because the applicable employees all worked at Spa Gaucin under the same employment policies and practices. Mot., Docket No. 36 at 17. Since Plaintiff has demonstrated that there are common issues with respect to the employment policies and practices at Spa Gaucin, and Defendants have not opposed

---

[6] The Court requests clarification at oral argument as to the number of class members. <u>Compare</u> Rose Decl., Docket No. 37 ¶ 3 (91), <u>with</u> Decl. Of Chris Lawless, Docket No. 43-1 ¶ 6 (90).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

commonality for purposes of this Settlement Agreement, the Court finds that the
proposed settlement class meets the commonality requirement.

### c.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are
typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) has a
permissive standard: the representative claims are typical if they are reasonably
comparable to the claims of the absent class members; substantial identicalness between
the claims is not required. Hanlon, 150 F.3d at 1020. The test for typicality is (1) whether
other members have a similar injury, (2) whether the action is based on conduct that is
not unique to the named plaintiffs, and (3) whether the same course of conduct has
injured other class members. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.
1992).

Here, the claims brought by Plaintiff are typical of the claims of Class Members,
who were also non-exempt workers. The claims made by Plaintiff meet the typicality
requirement because Defendants allegedly failed to provide meal breaks and rest breaks,
to pay all hours worked, and to pay "service charges" in full to all non-exempt, hourly-
paid employees as tips. Thus, all claims are based on the same underlying legal theory.

### d.    Adequacy

Rule 23(a)(4) requires that a representative party fairly and adequately protects the
interest of the class. Fed. R. Civ. P. 23(a)(4). Representation is fair and adequate when (1)
the representative plaintiffs and counsel have no conflicts of interest with other class
members and (2) representative plaintiffs and counsel will prosecute the action
vigorously on behalf of the class. Staton, 327 F.3d at 957.

Plaintiff represents that her attorneys have significant class action experience, that
she has no antagonistic interests, and that the action was prosecuted vigorously to reach
the settlement. Mot., Docket No. 36 at 17. In addition, pursuant to the Settlement
Agreement, Plaintiff agreed to and has not opted-out of the class. Settlement Agreement,

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

Docket No. 37-1 ¶ 45. Accordingly, the Court finds that the adequacy requirement has been met.

### 2.      The Proposed Settlement Class Also Meets the Requirements of Fed. R. Civ. Pro. 23(b)(3).

Because the proposed settlement class satisfied the prerequisites under Rule 23(a), the Court must now consider whether it also satisfies Rule 23(b)(3). Based on the following analysis, the Court finds that it does satisfy Rule 23(b)(3).

Under Rule 23(b)(3), a plaintiff must show (1) that common factual and legal issues predominate over individual questions and (2) that a class action is a superior method to resolve the class claims. Fed. R. Civ. P. 23(b)(3). There are several relevant factors to consider during this analysis: (1) the class members' interest in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Id. 23(b)(3)(A)–(D). Here, the Court finds (1) that common factual and legal issues predominate over individual questions and (2) that a class action is a superior method to resolve the class claims.

### a.      Common Factual and Legal Issues Predominate Over Individual Questions.

To meet the predominance requirement, common questions must be so significant that a single suit resolves all the issues at dispute for all of the class members. Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1067 (9th Cir. 2014), abrogated on other grounds by Microsoft Corp. v. Baker, 137 U.S. 1702 (2017). This predominance inquiry is a more rigorous analysis, and it presumes that there is commonality. Gold v. Midland Credit Mgmt., Inc., 306 F.R.D. 623, 633 (N.D. Cal. 2014).

As explained previously, the Court has already found commonality. The most significant questions concern Defendants' employment policies and practices that apply evenly to all Class Members as non-exempt workers. Common issues predominate over

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

any potential individual ones because the class claims stem from the same working conditions at Spa Gaucin and all claims relate only to the spa personnel, the service charges, alleged missed breaks, and alleged off-the-clock work. Mot., Docket No. 36 at 17-18. Thus, the Court finds that the predominance requirement has been met.

> **b.     A Class Action is a Superior Method to Resolve the Class Claims.**

A class action is a superior method to resolve the claims. If all Class Members brought individual actions, they would need to prove the same wrongdoing by Defendants, using the same evidence. Resolving these claims through a class action avoids the inefficiency of repetitious litigation and the potential risk of inconsistent rulings. Additionally, litigating each claim individually is unrealistic as this would impose extraordinary burdens on the parties. See Wren v. RGIS Inventory Specialists, 256 F.R.D. 180, 210 (N.D. Cal. 2009) (finding class action superior where "[t]he alternative–hundreds or even thousands of individual actions–is not realistic.").

Plaintiff represents that no other action involving similar theories has currently been brought against Defendants. Id. A federal court in the Central District of California is an appropriate forum for the case, since the St. Regis Monarch Beach Resort is located in Orange County. Id. Finally, the case is manageable because it is a relatively small class action involving less than one hundred proposed Class Members, and if the case were to proceed to trial, the witnesses and evidence would be close in proximity to the Court. Accordingly, the Court finds that a class action in this case is a superior method to resolve the claims.

Because the proposed settlement class meets the Requirements of Fed. R. Civ. Pro. 23, the Court certifies the Proposed Settlement Class.

## B.     Final Approval of Settlement

### 1.     The Fairness Factors Support Settlement Approval

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959. For

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

this analysis, a court typically considers the following factors: (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and the stage of the proceedings; (6) experience and views of counsel; (7) presence of a governmental participant; and (8) reaction of the class members to the proposed settlement. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

### a. Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Class Counsel indicate their belief that the terms of the Settlement Agreement are fair and in the best interest of the Class in light of the facts and circumstances of the case, as well as the risk of delay and uncertainty associated with litigation, the defenses asserted by Defendants, and potential appellate issues. Mot., Docket No. 43 at 8. Plaintiff points to a case in the Los Angeles area that supports her position, suggesting that there may be merit to her claims. See Garcia v. Four Points Sheraton LAX, 188 Cal. App. 4th 36 (2010). Plaintiff has also indicated that at least one similar case involving allegations that "service charges" were illegally withheld from employees as tips that goes against her legal position is currently being appealed to the California Court of Appeals. See O'Grady v. Merchant Exchange Prods., Inc. Dba The Julia Morgan Ballroom, No. CGC-15-547796 (Super Ct. Cal. April 5, 2016). Considering the uncertainty with respect to the law as it relates to "service charges" in Dana Point and the risk and expense involved in continuing the proceedings in light of this uncertainty, this factor weighs in favor of approval.

### b. Amount Offered in the Proposed Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). As a result, district courts should not judge the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

(FACTA) Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014) (quoting Officers for Justice, 688 F.2d at 625). Instead, courts should consider the settlement in conjunction with "factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." Id.

Plaintiff asserts that the Settlement Agreement is reasonable because Class Counsel calculated the total service charge damages at issue as approximately $120,000, meaning that even after the deduction for the Class Representative Enhancement Payment and attorneys' fees and costs, the proposed Class Members would still receive a fair proportion of that amount. Mot., Docket No. 43 at 13-14. In addition, Class Counsel calculated that the total potential damages based upon hours worked for the missed break and off-the-clock work claims to be $30,000. Id. Plaintiff states that an award of $20,000 for these claims is fair in light of the hurdles that Plaintiff would have faced establishing the claim on a class-wide basis, Defendant's self-penalties and meal break premiums paid. Id.

The Court finds that a $185,000 settlement is a reasonable result for the proposed settlement class, particularly given that there is no guarantee that the proposed settlement class would have prevailed at trial based on the current state of the law with respect to service charges in Dana Point, California. Similarly, $20,000 allocated to the missed break and off-the-clock claims is reasonable in light of the uncertainty and likely delay in recovery.

### c.    Extent of Discovery Completed and the Stage of the Proceedings

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. The more the discovery [is] completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'" In re Toys R Us, 295 F.R.D. at 454 (C.D. Cal. 2014) (internal quotations omitted) (quoting Young v. Polo Retail, LLC, 2007 WL 951821, No. C-o2-4546 VRW, at *4 (N.D. Cal. Mar. 28, 2007)). Likewise, mediation suggests that the parties know their relative strengths and weaknesses. See id. at 455.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

Plaintiff asserts that the settlement agreement is the result of a reasoned compromise because the parties reached their agreement after thoroughly analyzing Defendants' employment policies, service charge revenue and distribution records, Settlement Class Members' time and payroll records, and after attending a full-day mediation before an experienced mediator well-versed in wage and hour class actions. Mot., Docket No. 36 at 6; Mot. Docket No. 43 at 14-15.

The parties have engaged in significant informal discovery and mediation, suggesting that the settlement is fair, reasonable, and adequate.

### d.    Experience and Views of Counsel

Both parties in this action were represented by competent counsel. Defendants retained Hirschfeld Kraemer LLP, while Plaintiff was represented by attorneys experienced in wage and hour class actions. Rose Decl., Docket No. 37 ¶ 20. Therefore, this factor also supports approval.

### e.    Reaction of the Class Members to the Proposed Settlement

"The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, as of June 7, 2019, the Claims Administrator has received only one (1) request for exclusion and no objections to the settlement. Decl. of Chris Lawless, Docket No. 43-1 ¶¶ 10-11. The absence of any objections supports the conclusion that the settlement is adequate. Thus, the reaction of the Class Members weighs in favor of final approval.

In sum, the fairness factors weigh in favor of approval.

### 2.    Evidence of Collusion.

When a settlement agreement is formed before formal class certification, simply considering the fairness factors alone is insufficient. Bluetooth, 654 F.3d at 946. Courts also need to examine whether the settlement is a result of collusion among the parties. Id.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

at 947. When examining whether collusion has occurred, a court needs to look for subtle signs of self-interest. Id. In Bluetooth, the Ninth Circuit identified three signs: (1) class counsel receives a disproportionate distribution of the settlement; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate from class funds without objection by the defendant; and (3) the parties arrange for unearned attorneys' fees to revert to defendants rather than to the class fund. Id.

There are potential warning signs here. First, Class Counsel stands to receive a higher-than-usual proportion of the settlement. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029; see also Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). Class Counsel applies to the Court for attorneys' fees of $61,666.66, or 33 percent of the Gross Fund Value and costs of $9,159.66. Mot., Docket No. 44 at 3. Therefore, the attorneys' fees exceed the Ninth Circuit's benchmark. However, as discussed in section C below, the benchmark may be cross-checked by a lodestar calculation. Class counsel has submitted supplementary declarations indicating that Mr. Rose spent 210 hours on the case and Ms. Liss-Riordan spent 50 hours. Rose Suppl. Decl., Docket No. 45-1; Liss-Riordan Decl., Docket No. 46. Even without deciding whether the particular rate requested would in itself be reasonable, the evidence of the hours spent on the case demonstrates that the lodestar would support the 33 percent award, even at much lower rates than those requested.[5] Given these circumstances, the attorney fees requested are not disproportionate to the settlement amount.

A "clear sailing" provision is also present. The Proposed Settlement provides that Defendants agree not to oppose the requested attorneys' fees. Settlement Agreement, Docket No. 37-1 ¶ 33. This kind of "clear sailing" agreement requires the Court to exercise a "heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." Bluetooth, 654 F.3d at 947.

---

[5] Mr. Rose has requested an hourly rate of $894. Rose Decl., Docket No. 44-1 at 2. While the evidence he submitted in his supplemental declaration is inadequate for the court to determine whether that rate would be reasonable, the hours worked by Mr. Rose alone would support the award, even calculated at half the hourly rate he requested.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

However, the Ninth Circuit has noted that "the inference of collusion drawn from a clear
sailing provision is reduced when the agreement lacks a reversionary or 'kicker
provision.'" Asghari v. Volkswagen Grp. of Am., Inc., No. CV 13-02529 MM (VBKx),
2015 WL 12732462, at *32 (C.D. Cal. May 29, 2015) (citing Bluetooth, 654 F.3d at 949).
In this case there is no "kicker provision" as the attorneys' fees are awarded from the
Gross Fund Value with no provision that any fees not awarded will revert back to
Defendants. Therefore, despite the clear sailing provision, the absence of a "kicker
provision" in the Proposed Settlement reduces the likelihood that Class Counsel and
Defendants colluded to confer benefits on each other at the expense of Class Members.
Accordingly, this provision does not give the Court cause for concern.

Additionally, the fact that negotiations were serious in nature and the parties
appeared to be well-informed further points to an absence of collusion. The parties
reached the Proposed Settlement Agreement after a full-day, thirteen hour mediation
session with Klerman. Rose Decl., Docket No. 37 ¶ 9. Defendants produced timekeeping
records and payroll records for the proposed settlement class. Id. ¶ 8. Moreover, the role
of the mediator is a significant factor in concluding that there was no collusion.

Several considerations indicate that the Proposed Settlement Agreement is the
product of serious, informed, non-collusive negotiations. Thus, the Court is satisfied that
the settlement was not the product of collusion between the parties.

### 3.    Class Representative Enhancement Payment

Courts have discretion to issue incentive awards to class representatives. Rodriguez
v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The awards are "intended to
compensate class representatives for work done on behalf of the class, to make up for
financial or reputational risk undertaken in bringing the action, and, sometimes,
to recognize their willingness to act as a private attorney general." Id. An unreasonable
incentive award may indicate that a settlement was reached through fraud or
collusion. Staton, 327 F.3d at 975.

Courts evaluate incentive awards relative to named plaintiff's efforts, considering
"the actions the plaintiff has taken to protect the interests of the class, the degree to which
the class has benefitted from those actions, . . . the amount of time and effort the plaintiff

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| | |
|---|---|
| Title | Emma Hart v. Marriott International, Inc. |

expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977). Incentive awards "are particularly appropriate in wage-and-hour class actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015). They "typically range from $2,000 to $10,000." Id.

Here, the Proposed Settlement provides Plaintiff with an incentive award of $7,500. Settlement Agreement, Docket No. 37-1 ¶ 34. The $7,500 comprises 4 percent of the Gross Fund Value, which is higher than what some courts have found excessive. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an award constituting one percent of the settlement fund was excessive). Plaintiff has indicated that the average award for Class Members is $1,062.73. Decl. of Chris Lawless, Docket No. 43-1 ¶ 13. The proposed enhancement payment is approximately $2,000 more than the highest payment to a participating Settlement Class Member, which is estimated at $5,414.35. Id.

Class Counsel argues that the proposed enhancement for Plaintiff is reasonable because she was "involved in multiple conference calls and participated in a nearly 14-hour long mediation," Mot. Docket No. 44 at 10, and that conversations with Ms. Hart were "consistently helpful and involved," Decl. of Adam Rose, Docket No. 45 ¶ 7. Neither Plaintiff nor Class Counsel have submitted a more detailed record of the time Ms. Hart dedicated to bringing and prosecuting the case. An examination of Mr. Rose's itemized time report shows that he engaged with or otherwise consulted with Ms. Hart for approximately 15.8 hours, which includes a 13.5-hour day of mediation. Rose Time Summary, Docket No. 45-1 at 1-4. Given the length of the case, the time and resources Ms. Hart expended to prosecuting it, the total settlement amount, and the average Class Member settlement amount, the Court finds that $3,000 is a reasonable enhancement payment. The $4,500 difference in the award requested and the award approved by the Court will become part of the Net Fund Value to be distributed to the Class Members on

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |
|---|---|---|---|

| Title | Emma Hart v. Marriott International, Inc. |
|---|---|

a proportional basis relative to the size of their individual settlement payments. Settlement Agreement, Docket No. 37-1 ¶ 34.

> **4.      The Proposed Settlement Falls Within the Range of Possible Approval.**

Finally, "[p]reliminary approval of a settlement and notice to the class is appropriate if 'the proposed settlement . . . . falls within the range of possible approval.'" Cruz v. Sky Chefs, Inc., 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). To determine whether a settlement falls within the range of possible approval, courts consider (1) substantive fairness and adequacy and (2) plaintiffs' expected recovery balanced against the value of the settlement offer. Tableware, 484 F. Supp. 2d at 1080.

Here, the Proposed Settlement amount appears to fall within the range of possible approval. Class Counsel evaluated the potential liability of Defendants using the time and payroll records it provided. Rose Decl., Docket No. 37 ¶ 13. They determined that the realistic maximum recovery would be approximately $150,000. Id. ¶¶ 18-19. They similarly estimated the meal and rest break recovery amount to be $30,000. Mot., Docket No. 43 at 13-14. Thus, the Court finds that the proposed Settlement Agreement with an estimated $93,833 Net Fund Value generally reflects a substantial recovery due to the litigation risks with respect to both merits and certification. See In Re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement roughly one-sixth the size of the potential recovery was fair and adequate); Rigo v. Kason Indus., Inc., 2013 WL 3761400, No. 11-CV-64-MMA(DHB), at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation.").

> **5.      Notice was Adequate**

A class notice must meet the notice requirements in Rule 23(c)(2)(B). Rule 23(c)(2)(B) requires the notice to be the "best notice . . . practicable under the circumstances," and the notice must provide individual notice "to all members who can be identified through reasonable effort." However, actual notice is not required under

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-2021JVS(KESx)          Date   June 24, 2019

Title   Emma Hart v. Marriott International, Inc.

Rule 23(c)(2)(B). See Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

Rule 23(c)(2)(B) also contains specific substantive requirements for the notice. The notice needs to state in clear language (1) the nature of the action; (2) the definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if that member desires; (5) that the court will exclude any member who requests to be excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B).

In its Preliminary Approval of the Settlement, the Court found that the notice plan was generally clear and adequately conveys most necessary relevant information regarding the Proposed Settlement and provides clear instructions regarding the claim and opt-out procedures. Order, Docket No. 42-1 at 16-17. Plaintiff has since filed a declaration of the Settlement Administrator that describes the execution of the Notice Plan, which conformed to the plan previously approved by the Court. Decl. of Chris Lawless, Docket No. 43-1. Eighty-nine (89) of ninety (90) possible class members, approximately 98.89%, will be sent a settlement payment. Id. ¶ 13. One class member opted out and none have objected. Id. ¶ 10-11.

Given the high participation rate, the Court is satisfied that the notice provided to class members was reasonable and adequate. Edwards v. Nat'l Milk Producers Fed'n, No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.").

## C.    Attorneys' Fees and Costs

Rule 23(h) states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029; see also Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for

JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-2021JVS(KESx)                Date    June 24, 2019

Title    Emma Hart v. Marriott International, Inc.

any 'special circumstances' justifying a departure.").

    The Ninth Circuit encourages courts to use the lodestar method as a "cross-check" on the reasonableness of a fee award determined with the percentage method. See Vizcaino, 290 F.3d at 1050; Petroleum Prods., 109 F.3d at 607 ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates."); Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 95496, at *6 (N.D. Cal. Dec. 21, 2007). As such, this Court will consider a lodestar calculation for purposes of comparison and validation.

    To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). The court must be cautious, however, not to adjust the lodestar figure based on any of the foregoing factors that are subsumed in the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364 & n.9 (9th Cir. 1996). The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0. Vizcaino, 290 F.3d at 1051 n.6; Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2021JVS(KESx) | Date | June 24, 2019 |

| Title | Emma Hart v. Marriott International, Inc. |

Here, Class counsel calculated its lodestar amount at approximately $850,000. Class Counsels Adam Rose and Shannon Liss-Riordan submitted documentation of their 210 and 50 work-hours spent on the case, respectively. Rose Time Summary, Docket No. 45-1; Liss-Riordan Decl., Docket No. 46. They apply to the Court for attorneys' fees of $61,666.66, or 33 percent of the Gross Fund Value and costs of $9,159.66. Mot., Docket No. 44 at 3. This exceeds the Ninth Circuit's benchmark. But "[t]he benchmark percentage should be adjusted, or replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Given the time Class Counsel spent on the case and the complexity and novelty of the legal theories involved, attorney fees of 33 percent of the Gross Fund Value are justified. In the Los Angeles area, hourly attorney fee rates between $400 and $700 are common. See e.g., Counts v. Meriwether, 2016 WL 1165888, *3-4 (C.D. Cal. 2016) (finding hourly fees of between $446 and $701 "reasonable and consistent with the prevailing rates in the Central District"). Taking the lowest hourly amount in Counts ($446) and applying it to the lodestar calculation here (250 hours times $446) yields nearly double the requested attorney fees, without considering the time devoted to the case by other individuals. Thus, the Court grants the motion for attorney fees of $61,666.66.

Class Counsel applies to the Court for $9,159.66 in costs. Mot., Docket No. 44 at 3. Only $6,950 can be accounted for by Class Counsel's itemized documentation. Rose Costs Supplement, Docket No. 50-1. Of the $6,950, $1,435 went to filing the case, $15 was spent to serve Defendant, and $5,500 was the Plaintiff's share of the Mediator's fee. Id. The $2,209.66 difference between the requested amount and the costs itemized by documentation are attributable to Ms. Liss-Riordan's travel to the mediation from Massachusetts. Rose Decl., Docket No. 50 ¶¶ 5-6. Because no documentation or itemization of these travel costs were provided, the Court grants the motion for costs less $2,209.66, leaving a total costs award amount of $6,950. The $2,209.66 difference in the costs requested and the costs approved by the Court will revert back to the Net Value Fund to be distributed to the Class Members on a proportional basis relative to the size of their individual settlement payments. Settlement Agreement, Docket No. 37-1 ¶ 33.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    SACV 17-2021JVS(KESx)                    Date    June 24, 2019

Title       Emma Hart v. Marriott International, Inc.

### IV. CONCLUSION

The Court finds that the proposed settlement class meets the requirements of Fed. R. Civ. Pro. 23 and therefore **certifies** the settlement class.

For the foregoing reasons, the motion for final approval of class action settlement is **granted**, except that the class representative enhancement award shall be $3,000. Further, the motion for attorney fees and costs is **granted**, except that the costs awarded shall be $6,950.

### IT IS SO ORDERED.

                                                            0    :    00

                                    Initials of Preparer    lmb